[Filed October 17, 1892.]

## STATE OF OREGON *v.* R. H. RANDOLPH.

[S. C. 31 Pac. Rep. 201 ; 17 L. R. A. 470.]

1. CONSTITUTIONAL LAW — POLICE POWER OF STATE.— Every person has the
   right to pursue any lawful occupation he may choose, subject to such
   restrictions as the government may impose for the protection of society;
   and this power to regulate and restrict is inherent in every government,
   and is a broad and comprehensive one.

2. CONSTITUTIONAL LAW — REGULATION OF THE PRACTICE OF MEDICINE AND
   SURGERY.— Session Laws, 1889, 144, as amended by Session Laws, 1891,
   153, which makes it unlawful for any person to practice medicine or
   surgery in the state without first obtaining from the state board of exam-
   iners a certificate that he is a graduate of a medical institution in good
   standing; or, if he is not a graduate, that he has been found on exam-
   ination to be qualified to practice medicine or surgery; or that he was a
   practitioner of medicine or surgery, and was so engaged at the passage
   of the act, does not violate the constitution of Oregon, article I., section
   20, which declares that " no law shall be passed granting to any citizen,
   or class of citizens, privileges or immunities which, on the same terms,
   shall not equally belong to all citizens "; nor the constitution of the
   United States, article IV., section 2, which declares that " the citizens of
   each state shall be entitled to all the privileges and immunities of citi-
   zens in the several states "; nor the constitution of the United States,
   14th Amendment, which provides that " no state shall make or enforce
   any law which shall abridge the privileges or immunities of the citizens
   of the United States ": since it neither grants nor refuses to any citizen,
   or class of citizens, any right or privilege.  This law simply prescribes a
   rule of evidence for determining the qualifications of physicians and sur-
   geons; and the rule prescribed is a reasonable one.*

3. The equal privileges or immunities of citizens are not infringed by a
   statute which exempts those who are practicing medicine or surgery at
   the time of its passage from the provision requiring a diploma or a cer-
   tificate of a state board of examiners to entitle a person to practice such
   profession.

---

*NOTE.— An exhaustive discussion of the constitutional equality of priv-
ileges, immunities, and protection, including the right to practice professions,
will be found appended to the case of *Louisville Safety Vault Co.* v. *Louisville
& Nashville R. R. Co.* 14 L. R. A. 579.— REPORTER.

Multnomah County : LOYAL B. STEARNS, Judge.

Defendant appeals.    Affirmed.

Appellant R. H. Randolph was indicted by the grand jury of Multnomah County, for the crime of practicing medicine without first having obtained a license to so do, and in violation of the act of the legislature of the state of Oregon, passed February 28, 1889, and as amended by act of legislature passed February 21, 1891. (Sess. Laws, 1889, 144 ; Sess. Laws, 1891, 153.)

Appellant interposed a demurrer in the court below that the indictment did not state facts sufficient to constitute a crime, which said demurrer was overruled. Appellant then entered a plea of not guilty; and the case coming on for trial he was tried before a jury and found guilty, and was by the court sentenced to pay a fine of $50, from which judgment this appeal is taken.    Appellant relied in the court below upon the unconstitutionality of the said act of 1889, and as amended in 1891, that said act and acts amendatory thereto are in violation of section 20 of Article I. of the state constitution.

*Nathan D. Simon ( Sears & McGinn* on the brief), for Appellant.

We claim that this law violates section 20 of article I. of our constitution, which provides that no law shall be passed granting to any citizen or class of citizens privileges or immunities which upon the same terms shall not equally belong to all citizens.

In the case of *Brooks* v. *Mangan,* 86 Mich. 576 ( 24 Am. St. Rep. 137, 49 N. W. Rep. 633), under a license ordinance, it was held that where a discrimination was made between residents of one city and non-residents, in regard to the necessity of taking out licenses, that said discrimination was unreasonable, and the ordinance was therefore void.    In the case of *Yick Wo* v. *Hopkins,* 118 U. S. 356, it was held that an ordinance regulating laundries and conferring upon municipal officers arbitrary power

in regard to who shall and who shall not carry on the business, is in violation of the constitution of the United States and therefore void. But the case directly in point and upon which we rely particularly is the case of *State* v. *Pennoyer,* 65 N. H. 113 (18 Atl. Rep. 878). See also *Missouri* v. *Lewis,* 101 U. S. 22; *Barbier* v. *Connolly,* 113 U. S. 31.

It seems to us that these authorities clearly show that this law discriminates between residents and non-residents of the state, and is invalid and unconstitutional. If all physicians in the state of Oregon, without excepting those who had lived here prior to the passage of the act, had been required to take out this license or appear before the board of examiners, then there could have been no discrimination; but as the statute now stands there is a clear discrimination, giving those physicians who have resided here certain rights which non residents have not. Exemption from the burden of an examination is made to depend — not upon integrity, education, and medical skill — but upon a continuous dwelling in one place for a certain time. Under this statute any "quack" who had practiced within the state of Oregon at the time of the approval of the act, and who, within sixty days after the passage and approval thereof, registers his name, would be entitled to practice, while the ablest physician in the country would be compelled to go before a board of medical examiners because he was a non-resident of the state, and upon the result of such examination would depend his right to practice in this state. Not only is the discrimination arbitrary, but it is most unjust and even detrimental to the best interests of the community.

These questions should be considered and decided with a view of having the law in future so framed as to prevent any such controversy. The next session of our legislature, which is near at hand, can easily amend this law and thus prevent any difficulty in this direction, and the rule should be clearly laid down by this court with a

view of preventing such discrimination and such contro-
versy, and if our supreme court shall lay down the rule
clearly that such discriminations can not be allowed.
future laws will be framed with that end in view, and all
the time, trouble, and delay of testing these questions
will be saved to the benefit of the state as well as the
individuals who are directly interested in the subject of
the statute.

*Wilson T. Hume,* district attorney, and *John H. Hall,* for
the State.

Appellants claim that the provisions of section 13 of
the act of 1889 is in violation of the above constitutional
provisions.    Said section 13 reads as follows:    "The
provisions of this act shall not apply to those who are
now practicing medicine or surgery within the state of
Oregon; *provided,* they shall within sixty days after the
passage and approval of this act cause their names and
places of residence to be registered in the office of the
county clerk of the county in which they reside, in a
registery book, there to be kept by said clerk, and to be
named a registry book of practicing physicians and
surgeons."

This section is clearly not within the provisions of sec-
tion 20 of article I. of the constitution, and is not a law
granting any citizen or class of citizens privileges or
immunities which, upon the same terms, might not belong
to all citizens of this state.    No class of citizens of this
state are prohibited from the practice of medicine by said
act, provided they have the proper qualifications, and
comply with the law in relation thereto.

It has been held in a great number of cases that such a
law is not in violation of section 2 of article IV. of the
federal constitution, which in effect is very similar:
*Conners* v. *Elliott* et al. 18 How. (U. S.) 591; *Paul* v. *Vir-
ginia,* 8 Wall. 168; *Ducat* v. *Chicago,* 10 Wall. 410; *Liver-
pool Ins. Co.* v. *Massachusetts,* 10 Wall. 567.

The New Hampshire case, cited by appellant in his

brief, is not in point, for in that case there was a discrimination between citizens of the same state residing in different localities.    But in the case at bar, each and every person who is qualified to practice medicine (and some who are not) may, under said statute, be enabled to do so, and we respectfully submit that the judgment of the lower court should be affirmed.

*Geo. E. Chamberlain,* attorney-general, also for the State.

It is a well-settled rule of statutory construction, that when an act of a sister state is adopted and followed by the legislature of another state, the construction it had and received from the courts of the state whence it was taken, is adopted with it, and the decisions of the courts there are authority in construing the same: *Barmore* v. *State Board Medical Examiners,* 21 Or. 306 ; *Gerrish* v. *Gerrish,* 8 Or. 351 ( 34 Am. Rep. 585) ; *Trabant* v. *Rummell,* 14 Or. 17 ; *McIntyre* v. *Kamm,* 12 Or. 253 ; *Crawford* v. *Roberts,* 8 Or. 324.

It will be found by a comparison of the medical practice act of 1889, and the amendments thereto of 1891, with the acts of Illinois and Missouri, that our statute is almost *in ipsis verbis* of the acts of the said states.

In the case of *Barmore* v. *State Board Medical Examiners,* 21 Or. 308, the court said:  " This class of legislation has its origin in the police power of the state.    Its object is to protect the inhabitants of the state from imposition by presumptious pretenders, and it has been upheld and sustained in Massachusetts, Maine, New York, Ohio, Illinois, Alabama, Georgia, Missouri, and Texas. "

See also as sustaining the validity of such legislation: *People ex rel* v. *State Board Dental Examiners,* 110 Ill. 185; *Illinois State Board Dental Examiners* v. *People,* 123 Ill. 238; *State ex rel.* v. *Gregory,* 83 Mo. 123 (53 Am. Rep. 565); *Ex parte Spinney,* 10 Nev. 334; *Eastman* v. *State,* 109 Ind. 278 (58 Am. Rep. 400); *Richardson* v. *State,* 47 Ark. 562; *Hard-*

*ing* v. *People*, 10 Colo. 387 (15 Pac. Rep. 727); *Antle* v. *State*, 6 Tex. App. 202.

The following cases recognize the right and power of the state to restrain and regulate persons engaged in any business or pursuit when the public welfare demands it, or would be promoted thereby: *Goldthwaite* v. *Montgomery*, 50 Ala. 486: *Porter* v. *State*, 58 Ala. 66; *Cohen* v. *Wright*, 22 Cal. 322; *Ex parte Yale*, 24 Cal. 241 (85 Am. Dec. 62); *State* v. *Goldman*, 44 Tex. 104; *Wheat* v. *State*, 6 Mo. 455; *Schmidt* v. *State*, 14 Mo. 137; *State* v. *Hale*, 15 Mo. 607; *State* v. *Richeson et al.* 45 Mo. 575; *Thompson* v. *Staats*, 15 Wend. 395; *Spaulding* v. *Inhabitants of Alford*, 1 Pick. 33; *Wright* v. *Lanckton*, 19 Pick. 288; *Bibber* v. *Simpson*, 59 Maine, 181; *Wert* v. *Clutter*, 37 Ohio St. 347.

It will be observed from an examination of the authorities cited that the right of the legislature to regulate the practice of medicine and surgery, and other professions and occupations, is too well settled to be seriously questioned. They either expressly confirm the validity of such legislation or tacitly admit the constitutionality of these restraining enactments.

LORD, C. J.—The defendants were severally indicted for practicing medicine without having first obtained a license for that purpose, in violation of the act of the legislature regulating the practice of medicine and surgery in this state. Each defendant interposed a demurrer that the indictment did not state facts sufficient to constitute a crime, which the court below overruled, whereupon the defendants each entered a plea of not guilty, and subsequently, upon being tried by a jury, were found guilty and sentenced by the court to pay a fine of fifty dollars each, from which several judgments the defendants have prosecuted this appeal. The defendants challenge the validity of the act of 1889 (Sess. Laws, 1889, 144), and the amendments thereto (Sess. Laws, 1891, 153), regulating the practice of medicine and surgery in this state, as in violation of section 20, article I., of the

state constitution; and also as in conflict with section 2 of article IV. of the constitution of the United States, and the fourteenth amendment to the same. Under the statute in question, and its amendments, every practitioner of medicine and surgery, to entitle him to practice his profession, is required to obtain a certificate from the state board of examiners that he is a graduate of a medical institution in good standing; or if he is not a graduate, that he has been found, upon examination by the board, to be qualified to practice medicine or surgery; or that he was a practitioner of medicine or surgery, and was so engaged at the passage of the act; and that statute also provides that any person practicing medicine or surgery without obtaining such certificate shall be deemed guilty of a misdemeanor, and shall be punished by a fine or imprisonment or both in the discretion of the court. Corresponding to these classes, the act provides that the board shall prepare three forms of certificates — one for persons in possession of diplomas or licenses, one for candidates examined by the board, and one for those who were engaged in the practice at the passage of the act, and have registered, etc., in conformity with section 13 of the act.

The objections are directed to that section of the act as unconstitutional which permits any person to obtain a certificate of qualification to practice medicine or surgery who was so engaged in the practice of his profession when the act took effect, upon making the registry re quired by its provisions. These objections are, (1) that the act discriminates between the citizens of this state by permitting one to practice medicine or surgery without examination, who was so engaged when the act took effect, while it denies the privilege to another who may wish to engage in the practice after the passage of the act; and (2) that it discriminates between residents and non-residents of the state, by permitting a physician who was a resident and engaged in the practice when the act took effect to continue the pursuit of his profession with

out examination, while it denies the privilege to a non-resident who may seek to engage in the practice, unless he undergoes an examination by the board or is a graduate and in possession of a diploma. The first point is based on the assumption that this act, or section 13 of the act, is in conflict with section 20, article I., of the state constitution, which provides that "no law shall be passed granting to any citizen or class of citizens privileges or immunities which, upon the same terms, shall not equally belong to all citizens", and the second point is based on a like assumption that section 13 of the act is in conflict with section 2 of article IV. of the constitution of the United States, which provides that "the citizens of each state shall be entitled to all privileges and immunities of citizens in the several states," and also in conflict with that portion of the fourteenth amendment thereto, which provides that "no state shall make or enforce any law which shall abridge the privileges or immunities of the citizens of the United States."

Both these contentions involve the same principle, and the discussion of one necessarily includes the other, so that their separate consideration is not necessarily to be pursued. Both proceed upon the hypothesis that the act grants privileges or immunities to one class of persons while it denies the same privileges or immunities to another class. It is not thought that either of these contentions is tenable, or that the section referred to is in conflict with the constitution of the state or of the United States. The right of every person to pursue any lawful business, occupation, or profession he may choose to pursue, subject to such restrictions as the government may impose for the protection of the health, welfare, and safety of society, is unquestioned. This paramount right, inherent in every government, to provide such regulations in regard to various avocations as the public welfare may require, is very broad and comprehensive. It has been said that "All laws for the protection of the lives, limbs, health, and quiet of persons, and the

XXIII. OR.—6.

security of all property within the state, fall within this general power of the government": *State* v. *Noyes*, 47 Me. 189. REDFIELD, C. J., said that under the "general police power of the state, persons and property are sub- ject to all kinds of restraints and burdens in order to secure the general comfort, health, and prosperity of the state, of the perfect right in the legislature to do which no question ever was, or, upon acknowledged general principles, ever can be made, so far as natural persons are concerned": *Thorpe* v. *Rutland R. R. Co.* 27 Vt. 150 ( 62 Am. Dec. 625.). "Whatever difficulty, therefore, there may be in defining the precise limits and boundaries by which the exercise of this power may be governed, all agree that laws and regulations necessary for the protec- tion of the health, morals, and safety of society are strictly within the legitimate exercise of the police power": *Singer* v. *State of Maryland*, 72 Md. 465 ( 19 Atl. Rep. 1044 ).

Among the various occupations of life there are many which may be pursued by a person without danger to the public health or detriment to the public welfare, and need, therefore, no regulations to control them; but there are other occupations or callings which require special knowledge or training or experience to qualify a person to pursue them with safety to the public health and inter- ests ; and when the occupation or calling is of this char- acter no one can question the power of the state to impose such restrictions and to provide such regulations as it may deem proper for the protection of the health and welfare of its citizens from the evils resulting from igno- rance and incapacity. "The power of the state," said Mr. Justice FIELD, "to provide for the general welfare of its people, authorizes it to prescribe all such regulations as, in its judgment, will secure or tend to secure them against the consequences of ignorance and incapacity as well as of deception and fraud": *Dent* v. *West Va.* 129 U. S. 122 ( 9 Sup. Ct. Rep. 231 ).

There are few professions that require more careful

preparation to qualify a person to practice than medi-
cine, and certainly there are few that more nearly con-
cern the comfort, health and life of every citizen.   In
view of the important interests committed to the charge
of the physician, the necessity that he should possess the
necessary qualifications of learning and skill, is so great,
and his want of them likely to be attended with results
so injurious to health and destructive to life, that the
power of the state to enact such laws regulating the prac-
tice of medicine and surgery as are calculated to protect
the people from ignorant pretenders and charlatans, has
been established by repeated adjudications and is now too
firmly settled to admit of doubt.   In *State* v. *State Med.
Ex. Board,* 32 Minn. 324 (20 N. W. Rep. 238; 50 Am. Rep.
575), the court says: " In the profession of medicine, as
in that of law, so great is the necessity for special quali-
fications in the practitioner, and so injurious the conse-
quences likely to result from the want of it, that the
power of the legislature to prescribe such reasonable
conditions as are calculated to exclude from the profes-
sion those who are unfitted to discharge its duties, cannot
be doubted."   For the accomplishment of this purpose,
that is to provide means for the protection of the public
health from the ignorance and incapacity of those who
are unfitted to discharge the duties of a physician, our
state, as other states have done, enacted the law in ques-
tion; and unless it grants to some citizen or physician,
or class of them, some right or immunity which, upon
like terms or under similar circumstance, it denies to
another, it is a valid exercise of the police power and
must be upheld.

Section 13 of the act, in effect, only permits physicians
that were engaged in the practice when the law took
effect, upon registering as required by its proviso, to
apply to the board and obtain a certificate of qualifica-
tion authorizing them to practice medicine or surgery
without an examination.   In a word, it permits persons
who were engaged in the practice when the law took

effect to continue in the practice without an examination.
As it is the right of the state to prescribe qualifications
based on knowledge or professional skill, necessarily the
state must be the judge of such qualifications; and if the
rule established to determine them is reasonable and
appropriate for that purpose, it cannot operate to deprive
any one of the privilege or right to practice his profes-
sion.   The test of qualification, under the act, is based
on medical skill and knowledge.   If the person seeking
to practice medicine has a diploma or license from some
reputable institution, it is sufficient evidence, under the
act, of the requisite qualifications to entitle him to prac-
tice.   It is only when the person wishing to practice has
no such evidence of his qualification that the act requires
that he shall submit himself for examination by the board.
In establishing this rule, the state saw fit, for reasons
satisfactory to itself, to except by section 13 those phy-
sicians who were engaged in the practice at the passage
of this act.   In doing this it made the fact of being so
engaged in the practice at that time sufficient evidence of
qualification,— equivalent to a diploma,— rendering an
examination unnecessary.   To apply the language of
HAWLEY, C. J., it in effect declared that the physician
or surgeon who was engaged in the practice immediately
preceding the passage of the act was as well qualified, in
the judgment of the state, to continue the practice of his
profession as the student coming fresh from the halls of
college with his diploma was to commence it.   But in
establishing this rule as to these physicians and sur-
geons, the state did not deny the privilege or the right
of practicing medicine and surgery to any one.   No class
of citizens of this state are prohibited from the prac-
tice of medicine or surgery by the act, provided they
have the proper qualifications and comply with the law
in relation thereto.

The error of the defendant's contention consists in
assuming that the act grants "privileges or immunities"
to one class of citizens or physicians of this state which

it denies to other citizens of this state or other states. The act does not grant privileges or immunities to any citizen or class of citizens either within or without the state; it only establishes a rule of evidence by which qualification to practice medicine and surgery is to be determined. It makes the fact of a person being engaged in the practice when the law took effect sufficient evidence of his fitness to continue the practice of his profession without an examination, in the same way that the diploma of the student is accepted as sufficient evidence of his fitness to commence the practice without an examination. Under a similar act, the precise question now under consideration was presented in *Fox* v. *Territory*, 2 Wash. Ter. 297 (5 Pac. Rep. 603). There, as here, the objection urged was that the act discriminated between persons of equal learning and skill, by permitting that person to practice medicine and surgery who was so engaged the day before the passage of the law, while it denied the privilege to the person who may seek to engage in the practice the day after, or at any time after the passage of the law; and the court, by TURNER, J., said: "It appears to be an answer to this objection to say that the law does not deny the privilege of practicing medicine to any one. Any citizen of the territory may qualify himself in the manner pointed out by the law, and thereafter may lawfully engage in the practice of medicine and surgery." In *ex parte Spinney*, 10 Nev. 323, similar objections were urged under a statute which excepted physicians and surgeons who had practiced their profession in the state for the period of ten years preceding the passage of the act. HAWLEY, C. J., said: "The real test of qualification under the act is based upon medical skill and knowledge. The physician or surgeon substituted to practice must have received a medical education and must have obtained a diploma from some regularly chartered medical school."

Now the legislature saw fit in establishing this test to except from its provisions a certain class of physicians

and surgeons; in so doing it in effect declares (to state
the extreme case) that the physician or surgeon who had
practiced his profession in his state for a period of ten
years immediately preceding the passage of this act was
as well qualified, in its judgment, to continue the practice
of his profession as the student coming fresh from the
halls of college with his diploma was to commence it.
In adopting this exception, the legislature did not infringe
upon any provision of our state or federal constitution.
In *Dent* v. *W. Va.* 129 U. S. 124 (9 Sup. Ct. Rep. 231)
upon appeal from the supreme court of that state (25 W.
Va. 1), the statute, like that of Nevada, excepted those
physicians who had practiced medicine in the state con-
tinuously for a period of ten years; and to objections
urged against its constitutionality, Mr. Justice FIELD
said: "There is nothing of an arbitrary character in
the provisions of the statute in question; it applies to all
physicians except those who may be called for a special
case from another state; it imposes no conditions which
cannot be readily met; and it is made enforceable in the
mode usual in kindred matters, that is, by regular pro-
ceedings adapted to the case. It authorizes an examina-
tion of the applicant by the board as to his qualifications,
when he has no evidence of them in a diploma of a reput-
able medical college in the school of medicine to which
he belongs, or has not practiced in the state a designated
period prior to March, 1881." See also *State* v. *State Med.
Ex. Board,* 32 Minn. 325 (20 N. W. Rep. 238; 50 Am. Rep.
575); *State ex rel.* v. *Green,* 112 Ind. 462 (14 N. E. Rep.
352); *State* v. *Dent,* 25 W. Va. 1, where statutes containing
similar provisions were sustained and held to be consti-
tutional.

But the case mainly relied upon in support of the
contention by the defendants, is *State* v. *Pennoyer,* 65 N.
H. 113 (18 Atl. 878; 5 L. R. A. 709). There the act dis-
criminated in favor of one class of physicians to the
detriment of another. It divided practitioners of medi-
cine into two classes: (1) those who have and (2) those

who have not resided continuously in some one town of the state during a specified period. The latter class were required, while the former were not, to pay five dollars for a license in order to continue the practice of their profession. This was an arbitrary discrimination, laying a charge or burden on one class of physicians and citizens of the state not imposed upon another, based, not upon fitness or medical skill, but upon unchanged residence for the specified period. As the court says: "If all physicians alike, as well those who have as those who have not resided and practiced during the specified period in a single town, were required to procure and pay for a license, it may be that the statute would be open to no constitutional objection." It was therefore owing to the consideration that a change of residence during a specified period deprived one physician, without regard to his qualification or competency, of the right to practice his profession unless he paid a certain sum and obtained a license; while another, whose residence had remained unchanged, perhaps inferior in his education and medical skill, was exempted from the burden of paying such sum for a license, that the court held that the statute arbitrarily discriminated in favor of one citizen to the detriment of another, and for that reason was unconstitutional and void. No such objection can be raised against the act in question ; it imposes no burden or tax upon one class while exempting another class from its payment. The difference is, that the objection goes in one case to the rule of evidence by which the act requires qualification for practice to be determined, while in the other some physicians who are declared by the statute, or under its provisions are found to be qualified to practice, are and others are not subjected to the burden of paying for a license. The difference is material and fatal.

The objection in the case at bar is that the act permits those who were engaged in the practice when the act took effect to continue to practice without examination, and challenges the validity of this rule or standard of quali-

fication.    As we have shown, such and similar provisions
regulating the practice of medicine do not operate to de-
prive any one of the privilege of practicing his profession,
and have uniformly been held by the courts to be consti-
tutional.    As Mr. Justice FIELD said :   " The nature and
extent of the qualifications required must depend pri-
marily upon the judgment of the state as to their neces-
sity.    If they are appropriate to the calling or profession,
and attainable by reasonable study or application, no ob-
jection to their validity can be raised because of their
stringency or difficulty.    It is only when they have no
relation to such calling or profession, or are unattainable
by such reasonable study and application, that they can
operate to deprive one of his right to pursue a lawful
vocation ":   *Dent* v. *West Va. supra.*    In our judgment the
act in question is fair and reasonable, and imposes no
conditions which cannot be readily met by reasonable
study and application ; its requirements are an appropri-
ate exercise of the police powers of the state to protect
the life and health of its citizens from the ignorance and
incapacity of the charlatan and quack; and the act, in
assuming that those engaged in the practice were quali-
fied, and permitting them to continue the pursuit of their
profession without examination, violated no right of the
defendants in a constitutional sense, nor did it deny them
the privilege of practicing their profession when they
should exhibit or furnish appropriate evidence of their
qualifications so to do.

We think the act is valid in the particular objected to
and must be upheld.    It results, therefore, that there was
no error and the judgment must be affirmed.