Argued August 23, affirmed October 27, petition for rehearing
denied November 22, 1972, petition for review
allowed January 17, 1973
(See later issue of Oregon Reports)

# WARD, *Respondent, v.* OREGON STATE BOARD OF NURSING (No. 370-781), *Appellant.*

502 P2d 265

*John W. Burgess,* Special Assistant Attorney General, Salem, argued the cause for appellant. With him on the briefs were Lee Johnson, Attorney General, and John W. Osburn, Solicitor General, Salem.

*Dale A. Rader,* Portland, argued the cause for respondent. With him on the brief were Rader & Kitson, Portland.

Before SCHWAB, Chief Judge, and FOLEY and FORT, Judges.

FOLEY, J.

This is an appeal by the Oregon State Board of Nursing from an order of the circuit court for Multnomah County setting aside an order of that Board revoking respondent's license to practice professional nursing in Oregon.

The State Board of Nursing filed a complaint in which it was alleged that respondent had committed the following acts: (1) Employed her daughter, Karen Ryan (aka Karen Metko), as a registered nurse and permitted her to "perform the duties and serve as a registered nurse" at the Oregon City Nursing Home when Karen Ryan was not licensed in Oregon as a registered nurse and respondent "knew or had reason to know" that she was not so licensed; (2) employed and supervised Karen Ryan as a registered nurse and "permitted and instructed" her "to perform the duties and serve as a registered nurse" at the Gladstone Convalescent Hospital when Karen Ryan was not licensed in Oregon as a registered nurse and respondent "knew or had reason to know" of this fact; (3) recommended the employment of Karen Ryan as a registered nurse at Hillhaven Nursing Home in Portland when Karen Ryan was not licensed in Oregon as a registered nurse and respondent "knew or had reason to know" of this fact; and (4) recommended the employment of Karen Ryan as a registered nurse at Hearthstone Convalescent Center in Medford, Oregon, when Karen Ryan was not licensed in Oregon as a registered nurse and respondent "knew or had reason to know" of this fact.[1]

The complaint further alleged that this conduct was in violation of ORS 678.111(7),[2] in that respond-

---

[1] Another charge relating to Karen Ryan's alleged activities at Hillhaven Nursing Home was contained in the complaint but was subsequently abandoned by the Board.

[2] ORS 678.111 provides that a license to practice professional nursing may be revoked for any of the following causes:

"* * * * * *

"(1) Conviction of the licensee of any felony or of a misdemeanor involving moral turpitude if the conviction occurs after a license or temporary permit to practice professional

ent's acts "were and are conduct derogatory to the standards of professional nursing."

Respondent moved at the administrative hearing to dismiss the complaint on the grounds that ORS 678.111(7) is so vague and indefinite as to be incapable of interpretation, and also that the complaint failed to allege facts sufficient to constitute a cause of action. Respondent's motion was overruled, and a hearing was held. Following the hearing, the Board made written findings of fact and concluded from these findings that respondent's acts were "derogatory to the morals and standards of professional nursing and violated ORS 678.111(7)." The Board then entered its order revoking respondent's license.

Respondent appealed to the circuit court for Multnomah County pursuant to ORS 678.121.⑧ After

nursing is issued to such licensee. A copy of the record of such conviction, certified to by the clerk of the court entering the conviction, shall be conclusive evidence.

"(2) Gross incompetence of the licensee in the practice of professional nursing.

"(3) Any wilful fraud or misrepresentation in applying for or procuring a license, a renewal license, or temporary permit to practice professional nursing in this state.

"(4) Fraud or deceit of the licensee in the practice of professional nursing or in her admission to such practice.

"(5) Mental or physical inability to give safe nursing care.

"(6) Habitual or excessive use of intoxicating liquor or drugs.

"(7) Conduct derogatory to the morals or standards of professional nursing."

⑨ Former ORS 678.121 provided as follows:

"(1) If the board suspends or revokes the license or temporary permit of the accused licensee, she may appeal from the decision of the board to the circuit court for the county in which the accused licensee resides. Within 30 days after the filing of the decision the appellant shall file a notice of appeal with the secretary of the board.

"* * * * *"

a hearing at which respondent called five witnesses, the court set aside the Board's Findings, Conclusions, and Order. The court found that respondent's motion to dismiss the complaint should have been granted, that there was insufficient evidence to support any of the charges in the complaint, and that ORS 678.111(7) is unconstitutional. The Board appeals.

The trial court did not prepare an opinion in this case and thus it is difficult to ascertain on exactly what basis ORS 678.111(7) was found to be unconstitutional. The only indication appears in paragraph six of the Conclusions of Law, where the court states that the subsection "standing alone is ambiguous and incapable of interpretation, is too broad and undefined terms (sic) and is unconstitutional." Apparently, the trial court felt that unless the Oregon State Board of Nursing had previously adopted administrative rules specifically defining respondent's alleged conduct as derogatory to the standards or morals of professional nursing, the statute amounted to an unconstitutional delegation of legislative power. The trial court erred in this conclusion.

In *Board of Medical Examiners v. Mintz,* 233 Or 441, 378 P2d 945 (1963), defendant's license was revoked by the board after a hearing which determined that defendant's acts (an attempt to commit an abortion) were contrary to ORS 677.190(1), which provided that the board might revoke a physician's license for "[u]nprofessional or dishonorable conduct." On appeal the circuit court held that the board's complaint failed to state sufficient grounds for action because the board had not specifically defined defendant's conduct as "unprofessional" or "dishonorable," and the board appealed from that holding.

The Supreme Court reversed, holding that the prior promulgation of rules specifying the acts which would constitute "unprofessional or dishonorable conduct" is unnecessary. Following *Matter of Bell v. Board of Regents,* 295 NY 101, 65 NE2d 184, 163 ALR 900 (1945), the *Mintz* court cited the need for practicality and flexibility in laying down standards in areas involving administrative complexity:

"\* \* \* Admittedly, the term 'unprofessional conduct' does not have precise contours circumscribing its meaning. The limits between good and bad professional conduct can never be marked off by a definite line of cleavage. And the variety of forms which unprofessional conduct may take makes it infeasible to attempt to specify in a statute or regulation all of the acts which come within the meaning of the term. The fact that it is impossible to catalogue all of the types of professional misconduct is the very reason for setting up the statutory standard in broad terms and delegating to the board the function of evaluating the conduct in each case. \* \* \*" *Board of Medical Examiners v. Mintz,* supra, 233 Or at 448.

■ The *Mintz* court stated that the standards of conduct generally accepted by practitioners in the community are an adequate guide for the administrative body. We are persuaded that the rationale of *Mintz* is equally applicable to professional nursing. Therefore, we hold that "[c]onduct derogatory to the morals or standards of professional nursing" is an adequate statutory standard, and that prior promulgation of administrative rules was not a condition precedent to proceeding against respondent under the statute.

■ A necessary corollary to the need for flexibility in statutory language is recognition of the fact that the Board's discretion is not without controls. The

standards which are accepted by the practitioners in the community must be ascertained at the hearing through expert opinion, except in the clearest of cases. *Board of Medical Examiners v. Mintz,* supra. The trial court found that there was insufficient evidence produced at the hearing before the Board to establish what activities constitute the duties of a registered nurse in Oregon, particularly in the nursing home context. We agree.

The Board argues on this appeal that there was no need for expert testimony in this case, relying on *Mintz* and asserting that in this case "* * * the standard is as clear as it was in the *Mintz* case * * *." In *Mintz* the defendant physician was charged with attempting to commit an abortion. The court held that under those facts, given the ancient ethical proscription against performing abortions and the fact that *procuring* an abortion is clearly unprofessional conduct in Oregon,[4] the board was warranted in regarding the *attempt* to commit an abortion as a violation of medical ethics without resorting to outside expert opinion.

The *Mintz* court thus said only that under the circumstances of that case, given proof of an attempt to commit an abortion, the board was justified in classifying that act as "unprofessional conduct." The court did not say that the board could decide, without any guidelines or standards, what constitutes an attempt to commit an abortion.

In the instant case the Board contends that the statutory prohibition in ORS 678.021[5] against an un-

---

[4] ORS 677.190(2).

[5] ORS 678.021:

"Except as provided in ORS 678.031 or 678.061, it shall be

licensed person practicing professional nursing or holding oneself out to be a licensed, professional nurse establishes the requisite standard. But ORS 678.021 merely refers to the definition of "practice of professional nursing" contained in ORS 678.015,<sup>®</sup> which also utilizes vague and imprecise terminology. These statutes, by simply repeating and rephrasing the general terms by which respondent was charged, provide no guidance to the Board.

While the statute under which this proceeding was brought proscribes

> "[c]onduct derogatory to *the morals* or standards of professional nursing" (Emphasis supplied.) ORS 678.111(7),

---

unlawful for any person not licensed under ORS 678.010 to 678.170 by the Oregon State Board of Nursing:

"(1) To practice professional nursing or offer to practice professional nursing.

"(2) To use any sign, card or device to indicate that such person is a licensed professional nurse or to hold oneself out to be a licensed professional nurse, or to append the letters 'R.N.' to her name."

® ORS 678.015:

"The practice of professional nursing is the performance for compensation of any act, requiring substantial specialized judgment and skill and based on knowledge and application of the principles of biological, physical and social science, in the observation, care and counsel of the ill, injured or infirm, or in the maintenance of health or prevention of illness of others, or in the supervision and teaching of principles and techniques of nursing to other personnel involved in the nursing care of patients, or the administration of medications and treatments, whether the piercing of tissues is involved or not, as prescribed by a person authorized to practice medicine or surgery, osteopathy or dentistry in Oregon. This section does not authorize a licensed professional nurse to perform acts of diagnosis or prescription of therapeutic or corrective measures."

the state in its complaint limited itself as follows:

> "❋ ❋ ❋ [S]uch acts were and are conduct derogatory to the standards of professional nursing."

Thus the question of any violation of "the morals" of professional nursing is not before us. A review of the transcript of these proceedings reveals no attempt by the Board to establish what acts are or are not circumscribed by the concept of "professional nursing duties" through expert testimony. The Board relied in its initial brief on a "Code of Moral and Professional Standards for Registered Nurses" which it stated that the Board had adopted as OAR ch 851, 20-235, and that this provided the requisite standards. However, the Board subsequently acknowledged that the regulations were adopted by the Board subsequent to any of the events in the instant case.

In essence, the Board's position is contained in its reply brief:

> "❋ ❋ ❋ [I]n the present case the Board, which is charged by the legislature with the supervision of the practice of professional nursing, knows what acts constitute acts of professional nursing, and therefore did not need expert testimony to prove that the acts performed by respondent's daughter were professional nursing acts."

We cannot accept this position. The fact that the members of the Board felt that respondent's conduct was improper is not enough to provide the hearing with the requisite due process. In order to make judicial review of administrative decisions meaningful, the facts upon which such decisions are based must appear on the record in all but the clearest cases. *Board of Medical Examiners v. Mintz,* supra; *see also Nevada State Board of Pharmacy v. Garrigus,* — Nev —, 496

P2d 748 (1972). No court can probe the mental processes of the members of a board to determine whether a decision was arrived at in a rational manner.

■ Because of the failure of the Board to establish either the existence or the nature of standards as to what constitutes the practice of professional nursing, particularly in the nursing home context, it follows that the findings of violation of such standards are without basis and were properly set aside by the trial court.

Affirmed.

SCHWAB, C.J., specially concurring.

Judicial review in this case was pursuant to former ORS 678.121(3), which provided:

> "* * * On appeal the court *shall consider* the record certified by the secretary of the board and such other *evidence or testimony that either party may offer* and introduce * * *." (Emphasis supplied.)

The above statute has been repealed, Oregon Laws 1971, ch 734, sec 21, p 1786, and judicial review of proceedings before the State Board of Nursing is now pursuant to the Administrative Procedures Act, ORS ch 183.

While former ORS 678.121 is not identical to the statute in question in *Stehle v. Dept. of Motor Vehicles*, 229 Or 543, 368 P2d 386, 97 ALR2d 1359 (1962), it is so substantially similar in its import as to require the same interpretation with regard to the scope of judicial review. *Stehle* held that the scope of review at the circuit court level was de novo and implied that the scope of review before the appellate court was for error of law, stating:

> "* * * The trial court found that the evidence

failed * * *. We cannot say that this finding constituted error as a matter of law." 229 Or at 554.

In the case at bar there was a conflict in the evidence as to all factual allegations contained in the charges against Fern Ward. The trial judge found that none was supported by satisfactory evidence. It follows that, regardless of our interpretation of the evidence and regardless of the legal sufficiency of the charges, the judgment of the court below must be affirmed.

FORT, J., joins in this specially concurring opinion.