Argued May 25, reversed and remanded with instructions July 30,
petition for rehearing denied by opinion September 14,
1973, petition for review denied January 15, 1974

BLANK, *Respondent, v.* BLACK, *Appellant.*

512 P2d 1016

*Al J. Laue,* Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were Lee Johnson, Attorney General, and John W. Osburn, Solicitor General, Salem.

*Henry L. Bauer,* Portland, argued the cause for respondent. With him on the brief were Bauer, Murphy, Bayless & Fundingsland, Portland.

Before Schwab, Chief Judge, and Fort and Thornton, Judges.

## THORNTON, J.

The Real Estate Commissioner entered an order suspending for 60 days petitioner's license as an associate real estate broker for alleged improper conduct in the handling of a property transaction. Petitioner appealed to the circuit court for Multnomah County, which reversed and set aside the order of the Real Estate Commissioner. The Commissioner then appealed the opinion and order of the circuit court to this court. We reverse.

The Commissioner's order of suspension issued following a hearing on October 15, 1970. The notice of hearing charged petitioner with violations of ORS 696.300 (1) (a) and (q). The Commissioner found peti-

tioner's action in the handling of the real estate trans-
action "* * *" to constitute or demonstrate bad faith,
untrustworthiness and improper dealing in violation
of ORS 696.300 (1) (q)."[1]

The central issue before us is whether in order
to prove a violation of the above statute, the evidence
must establish that petitioner breached a legally en-
forceable agreement.

The essential facts are as follows:

Petitioner has been licensed to sell real estate
since 1968. On or about April 5, 1970, petitioner placed
an advertisement in a local newspaper offering for
sale a duplex located in Portland, which petitioner
himself was then purchasing on contract from a third
party. Herman Becker read the advertisement and
telephoned the petitioner three times on April 5, making
inquiries about the property—the rental, taxes, etc.
Mr. Becker made an appointment with petitioner for

---

[1] ORS 696.300 (1) (q) provides:

"(1) The commissioner may, upon his own motion, and
shall upon the verified complaint in writing of any person,
provided such complaint, or such complaint together with evi-
dence, documentary or otherwise, presented in connection
therewith, shall make a prima facie case, investigate the
actions of any real estate broker or real estate salesman, or
any unlicensed person who assumes to act in either such ca-
pacity within this state, and has the power to suspend or
revoke any license issued under ORS 696.010 to 696.490 and
696.610 to 696.730 at any time where the licensee has by false
or fraudulent representation obtained a license, or where the
licensee, in performing or attempting to perform any of the
acts mentioned in ORS 696.010 to 696.490 and 696.610 to
696.730 is deemed to be guilty of:

"* * * * *

"(q) Any act or conduct, whether of the same or a different
character than specified above in this section, which consti-
tutes or demonstrates bad faith, incompetency or untrust-
worthiness, or dishonest, fraudulent or improper dealings.

"* * * * *."

8 a.m. on April 6 for Mrs. Becker to meet with petitioner and view the property. Both Mr. and Mrs. Becker testified that Mrs. Becker was representing the two of them in dealing with petitioner.

The night before the scheduled meeting the Beckers prepared a proposed earnest money agreement, using a two-part printed form, in which they proposed to offer to purchase the property for $25,500, although the asking price was $28,500. The upper half of the form was captioned "EARNEST MONEY RE-CEIPT," and the lower half "AGREEMENT TO PUR-CHASE." In addition to filling in the various blank spaces on the printed form in the usual manner, the Beckers added to the upper half of the proposed agreement the following provision:

> "Note: This agreement to purchase is contingent upon the seller providing satisfactory evidence that the tenants are now paying a total of $280 per month rent on this property, that taxes are approximately $305 per year, and that the house is free of termites and termite damage."

Mrs. Becker met petitioner at the appointed hour, inspected the premises and presented the earnest money agreement to petitioner, offering $25,500 for the property. Petitioner rejected the offer. Mrs. Becker immediately offered $26,500, which petitioner accepted. Petitioner thereupon changed the words and figures in the upper half of the agreement to $26,500, and inserted a provision that the purchaser was to pay taxes when due and provide fire insurance on the premises. Petitioner did not, however, change the purchase price figures to $26,500 in the lower half of the form ("AGREEMENT TO PURCHASE") to conform with the change he had already made in the upper half.

Petitioner and Mrs. Becker both testified that she and petitioner signed both parts of the agreement *after* the figures were changed to show $26,500 as the purchase price and after petitioner had added the words "purchaser to pay taxes when due and provide fire insurance." Mrs. Becker gave petitioner a demand note for $100 as earnest money. Mr. Becker did not sign either portion of the agreement.

Petitioner testified that at the time he signed the agreement he intended to provide them with the "evidence" required therein.

Following the signing of the document, Mrs. Becker informed petitioner that her husband would also like to go through the premises later on the same day. Petitioner acceded to this request. Mrs. Becker then made an appointment with petitioner to meet Mr. Becker at the premises at 5 p.m. Mr. and Mrs. Becker went to the duplex at the appointed time but petitioner failed to appear.

The evidence was that some time later the same day after signing the agreement, petitioner entered into another earnest money agreement with a Bruce Ritchie, to whom he sold the property. Petitioner testified that he told Ritchie of the prior agreement with the Beckers, but the earnest money agreement with Ritchie makes no reference to the earlier transaction with the Beckers. Mrs. Becker testified that when petitioner did not meet them as promised, she telephoned him the next day, and that in the course of that conversation petitioner said:

"* * * [W]ell, after talking it over with his partner that it, and after reading the earnest money agreement, that it indicated that we were not acting in good faith to make all these requests, so such

> as requesting inspection for termite damage and said he didn't . . . then I asked him again if my husband could see the premises that evening and he said well he wasn't sure whether he was going to be in town but he would call."

It appears from the record that some time thereafter, possibly two or three days later, petitioner called Mrs. Becker and told her he did not wish to comply with the contingencies in the earnest money agreement and would not sell the property to them. Ultimately petitioner's attorney returned the Beckers' earnest money note to them.

The trial court, after hearing the evidence and considering the briefs of the parties, concluded:

(1) The agreement between petitioner and the Beckers was too indefinite to be legally binding because "* * * the terms were conditional until approved by Mr. Becker upon a showing that the house was free of termites and termite damage. It cannot be said such a contingency acceptance constituted a binding contract * * *"; and

(2) "* * * As a matter of law, the facts of this case do not reveal any bad faith agreement or dealings. Petitioner did not have a binding agreement with Mr. Becker, and he was within his rights to solicit or execute agreements with others."

■■ While we agree with the trial court that under the facts here the agreement between the parties was not legally binding in the absence of approval by Mr. Becker, we disagree with the court's conclusion that the Beckers' requirement that petitioner furnish proof concerning rentals, taxes and absence of termites made the agreement unenforceable.

In *Anaheim Co. v. Holcombe,* 246 Or 541, 426 P2d 743 (1967), our Supreme Court considered an earnest money agreement which contained a provision making the purchaser's offer "contingent on obtaining a loan of $25,000." The court held that when an agreement contains such a term it imposes upon the vendee an implied condition that he make a reasonable effort to procure the loan. *See also, Aldrich v. Forbes,* 237 Or 559, 570, 385 P2d 618, 391 P2d 748 (1964).

Similarly, in *Western Hills v. Pfau,* 265 Or 137, 508 P2d 201 (1973), the court citing *Anaheim Co. v. Holcombe,* supra, held that where the terms of an agreement to sell a tract of land required that both parties must be personally satisfied with a "planned development" to be negotiated by vendees with the city of McMinnville, the vendees were required to use reasonable diligence to comply with the conditions that would make vendor's performance possible.

We turn now to the central question, viz., whether in order to prove a violation of ORS 696.300 (1) (q) the evidence must establish that petitioner breached a legally enforceable agreement.

■ It is our conclusion that a licensed real estate broker or salesman may be found guilty of a violation of this provision notwithstanding the evidence does not establish as in the case at bar that the licensee breached a legally enforceable agreement.

■ The purpose of ORS ch 696 is to protect the public against improper conduct described in that chapter.

■■ A person licensed to deal in real estate under ORS ch 696 occupies a position of trust in dealing with the public. *Prall v. Gooden et ux;* 226 Or 554, 360 P2d

759 (1961); *Widing et al v. Jensen, Real Estate Com.,*
231 Or 541, 373 P2d 661 (1962); *Miesen v. Dept. of Com-
merce,* 3 Or App 251, 473 P2d 691 (1970). By statute
he is held to a strict fiduciary standard of good faith
and fair dealing. ORS 696.300. The 1969 legislature
expanded this statute to cover sales and exchanges of
the realtor's own property. ORS 696.020 (2) (b). The
effect of this statutory change was to raise the stand-
ard of business conduct of realtors when engaged in
selling their own property to the same high standard
applicable when they are functioning in transactions
between private parties. Thus the 1969 amendment
evidences a legislative intent to restrict a realtor's
right to engage in an arm's length transaction for his
own account.[2] The amendment operated to raise the
standard of conduct from that applicable to an arm's
length caveat emptor transaction between laymen to
that applicable to a fiduciary transaction.[3]

To hold that no greater duty was created by ORS
696.020 (2) (b) than that enforceable in contract would
be to render the statute meaningless.

In *Maple Hill Farms, Inc. v. Div. N. J. Real Estate
Comm.,* 67 NJ Super 223, 170 A2d 461 (1961), similar
conduct by a realtor in dealing on his own account was
found to support a revocation of a realtor's license.

■ The terms "bad faith," "untrustworthiness" and
"improper dealing" as used in ORS 696.300 (1) (q)

---

[2] This interpretation is supported by legislative history. *See,*
Minutes of Senate Financial Affairs Committee, February 26, 1969,
and statement of John E. Black, attached to Minutes of the House
Committee on Financial Affairs, May 6, 1969.

[3] For a case prior to the 1969 amendment illustrative of the
standards applicable to realtors when acting for their own account,
*see* Medak v. Hekimian, 241 Or 38, 41, 404 P2d 203 (1965).

have an existence and application separate and apart from the many other acts proscribed in ORS 696.300. We conclude that these terms include conduct in a real estate transaction which amounts to a breach of a moral obligation or duty owed to another, as well as conduct which constitutes a breach of a legal duty and which is legally actionable. *Cf., Lewis Realty v. Wisconsin R.E. Brokers' Board,* 6 Wis2d 99, 94 NW2d 238 (1959) ; *Moyer et al v. State Real Estate Comm.,* 1 Pa Cmwlth Ct 515, 276 A2d 327 (1971).

■ The petitioner's infraction in the case at bar was not as serious as those involved in *Prall v. Gooden et ux; Widing et al v. Jensen, Real Estate Com.;* and *Miesen v. Dept. of Commerce,* all supra. Such conduct does, however, show a sufficient lack of good faith by petitioner toward his prospective purchasers to support the finding of the Commissioner that his conduct demonstrated bad faith, untrustworthiness and improper dealing.[9] *Maple Hill Farms, Inc. v. Div. N. J. Real Estate Comm.,* supra.

■ As in *Miesen,* where the facts found by the Commissioner are supported by substantial evidence, they are binding upon this court. *Ward v. Ore. State Bd. of Nursing,* 266 Or 128, 510 P2d 554 (1973) ; *Bay v. State Board of Education,* 233 Or 601, 378 P2d 558, 96 ALR2d 529 (1963).

Reversed and remanded with instructions to vacate and set aside the order of the circuit court and rein-

---

[9] For a discussion of the construction and application of similar general language used by the legislature to describe prohibited conduct in other professional licensing statutes, *see* Ward v. Ore. State Bd. of Nursing, 266 Or 128, 510 P2d 554 (1973) (registered nurses); Board of Medical Examiners v. Mintz, 233 Or 441, 378 P2d 945 (1963) (physicians).

state the order of the Real Estate Commissioner dated October 20, 1970.

Reversed and remanded.

## ON PETITION FOR REHEARING

Lee Johnson, Attorney General; John W. Osburn, Solicitor General, and Al J. Laue, Assistant Attorney General, Salem, for appellant.

Henry L. Bauer and Bauer, Murphy, Bayless & Fundingsland, Portland, for respondent.

Before Schwab, Chief Judge, and Fort and Thornton, Judges.

THORNTON, J.

Petitioner contends, inter alia, that this court erred in not remanding the case to the trial court for a decision on several issues on which the trial court expressly reserved ruling. Petitioner is correct in pointing out that the trial judge reserved ruling on several issues raised in his petition for judicial review.

Accordingly, the final paragraph of this court's opinion, handed down July 30, 1973, is amended to read as follows:

"Reversed and remanded for further proceedings not inconsistent with this opinion."

Former opinion modified; rehearing denied.