Argued October 24, affirmed December 9, 1974

# KLEIN ET AL, *Petitioners, v.* REAL ESTATE COMMISSIONER HOLBROOK ET AL, *Respondents.*

528 P2d 1355

*Eugene L. Parker,* Portland, argued the cause and filed the brief for petitioners.

*Thomas H. Denney,* Assistant Attorney General, Salem, argued the cause for respondents. With him on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Before SCHWAB, Chief Judge, and FOLEY and THORNTON, Judges.

THORNTON, J.

Petitioners seek judicial review of an order of the Real Estate Commissioner suspending their real estate broker's licenses for a period of one year, effective July 1, 1974, for improper conduct in connection with petitioners' operation of a real estate vocational school. The Commissioner's order was issued following a hearing conducted on June 6, 1974, in which the evidence, by stipulation of the parties, consisted of the entire record of proceedings at the vocational school license suspension hearing before the Superintendent of Public Instruction.

Petitioners make four assignments of error: (1) the statutory authority invoked by the Commissioner is unconstitutional because of vagueness; (2) the suspension of petitioners' licenses is barred because they have been punished once before for the same incident; (3) the Commissioner lacks statutory authority to revoke the licenses because the activity involved was not strictly that of a real estate broker; and (4) the ultimate findings of fact and conclusions of law were not supported by substantial evidence.

The essential facts are as follows:

Petitioners, licensed real estate brokers, were conducting a real estate education school under a private vocational school license. Their primary course of instruction was designed to prepare applicants for the real estate broker's and salesman's license examinations. Prior to the June 1973 examinations, petitioners had approximately 350 students enrolled in their school. Petitioners averred that on approximately May 15, 1973, they received through the mail a large manila envelope, without a return address, containing arithmetic problems and multiple choice answers to

the problems. The questions were accompanied by a note advising the petitioners to destroy the materials after they had used them, which the petitioners did. After receiving the materials petitioners removed portions of a sample "final exam" used as a teaching device for their students and substituted in their place the materials received in the mail. The questions and answers were similar in content and format to previous test questions and answers administered by the Real Estate Division. Testimony at the hearing indicated that many of the questions given in the June examinations were identical to those distributed by the petitioners to their students. Several of the questions were specifically created for the June examinations.

In his ultimate findings of fact the Commissioner found that the petitioners knew or should have known that the materials received in the mail were arithmetic problems and solutions obtained without lawful authority from the Real Estate Division of the Department of Commerce; and that they knew or should have known that the materials were questions and answers scheduled to be given as a part of the mathematics section of the real estate broker's and salesman's examinations to be conducted in June.

As a conclusion of law, the Commissioner determined that by the commission of the acts in question the petitioners had violated ORS 696.300 (1)(q)① and had demonstrated themselves to be "untrustworthy

---

① ORS 696.300 (1)(q) provides:

"(1) The commissioner may, upon his own motion, and shall upon the verified complaint in writing of any person, provided such complaint, or such complaint together with evidence, documentary or otherwise, presented in connection there-

and incompetent" to transact business as real estate brokers under ORS 696.050 (1). The Commissioner suspended their licenses under authority of ORS 696.-300 (2).

For purposes of clarity we will defer until last our consideration of petitioners' first assignment.

Petitioners' second assignment is that the suspension of their licenses by the Commissioner is barred because they have been punished once for the same incident—when their vocational school license was revoked by the Superintendent of Public Instruction. Petitioners argue, by analogy to the principle of double jeopardy, that multiple administrative sanctions, i.e., suspension of vocational school license plus suspension of broker's license, arising out of the same transaction are in violation of their rights.

■ We are not persuaded by this argument. It is settled law in Oregon that the guarantee against double jeopardy applies only to criminal cases. *State v. Stewart*, 11 Or 52, 4 P 128 (1883); *Bailleaux v. Gladden*, 230 Or 606, 370 P2d 722 (1962). The revocation

---

with, shall make a prima facie case, investigate the actions of any real estate broker or real estate salesman, or any unlicensed person who assumes to act in either such capacity within this state, and has the power to suspend or revoke any license issued under ORS 696.010 to 696.490 and 696.610 to 696.730 at any time where the licensee has by false or fraudulent representation obtained a license, or where the licensee, in performing or attempting to perform any of the acts mentioned in ORS 696.010 to 696.490 and 696.610 to 696.730 is deemed to be guilty of:

"* * * * *

"(q) Any act or conduct, whether of the same or a different character than specified above in this section, which constitutes or demonstrates bad faith, incompetency or untrustworthiness, or dishonest, fraudulent or improper dealings.

"* * * * * ."

of two licenses issued by the state, involving misconduct arising out of one transaction, is not analogous to a double jeopardy situation. There is no loss of liberty involved here. The licenses granted to petitioners to practice their profession as real estate brokers and to operate a vocational school are separate privileges granted to petitioners by the state. *See, State ex rel. Peterson v. Martin,* 180 Or 459, 176 P2d 636 (1947). The state, through its administrative agencies, confers the privilege and retains the right and the duty to insure that the standards of the profession are maintained and that the public is protected. The applicable rule was announced by our Supreme Court in *State v. Randolph,* 23 Or 74, 31 P 201 (1892), in the following language:

"* * * The right of every person to pursue any lawful business, occupation, or profession he may choose to pursue, subject to such restrictions as the government may impose for the protection of the health, welfare, and safety of society, is unquestioned. This paramount right, inherent in every government, to provide such regulations in regard to various avocations as the public welfare may require, is very broad and comprehensive * * *." 23 Or at 81.

■ A person who is licensed to engage in several occupations may commit a single unlawful act which simultaneously would constitute statutory grounds for suspending or revoking his license to engage in more than one of the occupations he is licensed to practice. It is proper for each license-granting agency, under its statutory authority, to scrutinize his conduct and revoke or suspend his license, if necessary.

In their third assignment petitioners contend that the Real Estate Commissioner lacks the statutory

authority to suspend their licenses. Petitioners argue that ORS 696.300 (1)(q) is strictly limited to situations in which the licensee has performed a definite real estate broker's function; and that the operation of a school preparing applicants for the real estate broker's and salesman's examinations is not within the statutorily defined function of a real estate broker.

■ We conclude that the petitioners are correct in their contention in so far as the charge of violating ORS 696.300 (1)(q) is concerned. Although ORS 696.-300 (1)(q) is not expressly limited to conduct in the capacity of a broker or salesman, when this subsection is considered in context with the language of the entire section, applying the familiar rule of statutory construction *noscitur a sociis* (associated words), it is our conclusion that the conduct referred to is limited to acts by the licensee in his capacity as a broker or salesman, excepting where the licensee is acting for himself in a private capacity as in *Blank v. Black*, 14 Or App 470, 512 P2d 1016 (1973), Sup Ct *review denied* (1974), or where he has been convicted of certain enumerated crimes (ORS 696.300 (1)(m)). *State v. Fuller*, 164 Or 383, 101 P2d 1010 (1940); 2A Sutherland, Statutory Construction 101, § 47.16 (4th ed 1973). *See also*, Annotation, 56 ALR2d 573, 602 (1957), Grounds for revocation or suspension of license of real-estate broker or salesman, and supplemental annotations.

This conclusion does not, however, end our consideration of the charge against petitioners.

The complaint against petitioners also alleged, and the Commissioner found, that the described misconduct was in violation of ORS 696.050 (1) as well as ORS 696.300 (1)(q).

ORS 696.050 (1) provides in part as follows:

"Licenses shall be granted only to persons who are trustworthy and competent to transact the business of a real estate broker or real estate salesman in such manner as to safeguard the interests of the public and only after satisfactory proof has been presented to the commissioner * * *."

ORS 696.300 (2) provides:

"The commissioner shall, in addition, have power to revoke or suspend any license issued under the provisions of ORS 696.010 to 696.490 and 696.610 to 696.730, at any time, where the licensee performs any act or offers, attempts or agrees to do any act, for which the commissioner lawfully may refuse to issue a license to any applicant."

██ While we note that ORS 696.300(2) was not listed in the enumeration of code sections in the notice to petitioners, we believe that the listing of ORS 696.-050 (1) was sufficient under all the circumstances to put petitioners on notice that they were also being charged with a violation of ORS 696.300 (2) and ORS 696.050 (1). ORS 183.480 (7)(a) provides that this court shall reverse or remand the order of the administrative agency only if it finds:

"(a) The order to be unlawful in substance or procedure, but error in procedure shall not be cause for reversal or remand unless the court shall find that substantial rights of the petitioner were prejudiced thereby *and defects in the content of the notice required by ORS 183.415 not asserted at or prior to the commencement of the hearing before the agency shall not be cause for reversal or remand * * *.*" (Emphasis supplied.)

We can find nothing to indicate that petitioners asserted any such objection "at or prior to the commencement of the hearing."

A similar question was presented in *Campbell v. Bd. of Medical Exam.*, 16 Or App 381, 518 P2d 1042, Sup Ct *review denied* (1974), where the notice (and Bill of Particulars furnished at the request of the applicant) also failed to list all of the sections of the Oregon Revised Statutes conceivably involved.

> "While the Bill of Particulars afforded petitioner here did not include references to all the particular sections of the statutes and rules which were conceivably involved (ORS 183.415 (2)(c)), it did spell out in sufficient detail all the conduct which was the basis of the Board's denial action. As in *The Grog House,* 12 Or App at 433-34 [507 P2d 419, 423 (1973)], the record in the case at bar clearly shows that petitioner had detailed advance knowledge and was fully aware of the specific facts and charges which formed the basis of the action taken, in order to enable him to prepare his defense. He did not ask for a continuance. Therefore we cannot say that the failure of the Board to append references to ORS 677.-100 (1)(e) and ORS 677.080 (1) and (4) amounted to a denial of due process of law. *The Grog House v. OLCC,* supra * * *." 16 Or App at 387-88.

■ In the instant case petitioners had detailed advance knowledge and were fully aware of the charge and the specific facts which formed the basis of the action taken, in order to prepare their defense. We cannot say that the failure of the board to add ORS 696.300 (2) to the notice amounted to a denial of due process of law. *Campbell v. Bd. of Medical Exam.,* supra.

■ Here petitioners were engaged in preparing applicants to take the broker's and salesman's license examinations. To prepare applicants in such a manner that the purpose of the test is violated, i.e., giving to applicants questions and answers which will appear on a

license examination and therefore aiding possibly unqualified applicants to pass was highly improper, and demonstrated a lack of trustworthiness which would justify the Commissioner's refusing a license to an initial applicant. While the terms 'trustworthy' and its opposite 'untrustworthy' are not defined in the real estate code, in *Blank v. Black,* supra, we said:

> "The terms 'bad faith,' 'untrustworthiness' and 'improper dealing' as used in ORS 696.300 (1)(q) have an existence and application separate and apart from the many other acts proscribed in ORS 696.300. We conclude that these terms include conduct in a real estate transaction which amounts to a breach of a moral obligation or duty owed to another, as well as conduct which constitutes a breach of a legal duty and which is legally actionable. *Cf., Lewis Realty v. Wisconsin R.E. Brokers' Board,* 6 Wis2d 99, 94 NW2d 238 (1959) ; *Moyer et al v. State Real Estate Comm.,* 1 Pa Cmwlth Ct 515, 276 A2d 327 (1971).

> "* * * Such conduct does, however, show ·a sufficient lack of good faith by petitioner toward his prospective purchasers to support the finding of the Commissioner that his conduct demonstrated bad faith, untrustworthiness and improper dealing. *Maple Hill Farms, Inc. v. Div. N.J. Real Estate Comm.,* supra [67 NJ Super 223, 170 A2d 461 (1961)]." 14 Or App at 478-79.

■ The term "competent" as used in ORS 696.050 has a broader meaning and scope than "trustworthy." As the court said in *Dever v. Platt,* 81 Kan 200, 105 P 445 (1909), to be "competent" an applicant for a position must possess every qualification essential to the prompt, efficient and honest performance of the duties pertaining to the position to be filled. For a discussion of the construction and application of similar general language used by the legislature to describe char-

acter requirements and prohibited conduct in other professional licensing statutes, *see, Ward v. Ore. State Bd. of Nursing*, 266 Or 128, 510 P2d 554 (1973) (registered nurses) ; *Board of Medical Examiners v. Mintz*, 233 Or 441, 378 P2d 945 (1963) (physicians); and *Campbell v. Bd. of Medical Exam.*, supra (physicians).

■ In their fourth assignment petitioners contend that the ultimate findings of fact and conclusions of law were not supported by substantial evidence. This contention is without merit. The record contains ample evidence to support the Commissioner's findings and conclusions. This evidence meets the test established by ORS 183.480 (7) (d).

Lastly, we now take up petitioners' first assignment: the statutory authority invoked by the Real Estate Commissioner is unconstitutionally vague.

Petitioners argue that terms such as "trustworthy" and "competent" used in the statute are so imprecise that the statute is unconstitutional because of vagueness. Such an argument requires that we review the standards we apply when dealing with a challenge of this type.

"The Oregon approach to vagueness in statutes was stated in *State v. Hodges*, 254 Or 21, 27, 457 P2d 491 (1969), wherein the court stated:

" 'A law that is too vague for reasonable adjudication is bad on two grounds. A vague statute lends itself to an unconstitutional delegation of legislative power to the judge and jury, and, by permitting the jury to decide what the law will be, it offends the principle, if not the rule, against *ex post facto* laws * * *.'

This principle applies alike to license revocation cases. *Board of Medical Examiners v. Mintz*, 233 Or 441, 378 P2d 945 (1963), and *Ward v. Ore.*

*State Bd. of Nursing,* 11 Or App 353, 502 P2d
265 (1972), *reversed on other grounds,* 266 Or 128,
510 P2d 554 (1973)." *Palm Gardens, Inc. v. OLCC,*
15 Or App 20, 28, 514 P2d 888 (1973), Sup Ct
*review denied* (1974).

Petitioners argue that the statutory language is
so vague that they could not have known what type
of conduct would have subjected them to penalties,
and as a result of such subjective statutory terms the
Real Estate Commissioner has been given undue dis-
cretion in judging petitioners' activities.

In *Board of Medical Examiners v. Mintz,* 233 Or
441, 378 P2d 945 (1963), our Supreme Court, in re-
viewing a proceeding revoking a physician's license,
was faced with a similar question. The court held
that the statutory terms "unprofessional or dishon-
orable conduct" were not unconstitutionally vague,
and on the subject of vagueness and administrative
actions stated:

> "* * * We have previously held that the failure
> to specify in a statute the standards circumscrib-
> ing administrative actions is not necessarily fatal.
> It may be advisable for the legislature or the
> administrative agency to set out specific adjudica-
> tory standards in some instances. But this does
> not mean that a statute must always set out the
> precise instances under which it is to be operative.
> No matter how specific the standard or standards
> are stated, there is almost always a penumbra
> which requires the administrative agency to ex-
> ercise a judgment as to whether the facts before it
> fall within or outside the legislative design * * *."
> 233 Or at 447.

■ Although the statutory terms petitioners com-
plain of are quite broad, we do not find them unconsti-

tutionally vague. As the court said in *Mintz,* 233 Or at 448:

"* * * The fact that it is impossible to catalogue all of the types of professional misconduct is the very reason for setting up the statutory standard in broad terms and delegating to the board the function of evaluating the conduct in each case * * *."

■ We also find that the Commissioner's discretion is limited. In *Mintz* the court noted that the standards which the administrative agency is to apply in judging professional conduct are those which are accepted by the practitioners in the community. *See also, Ward v. Ore. State Bd. of Nursing,* supra; *Campbell v. Bd. of Medical Exam.,* 16 Or App 381, 518 P2d 1042, Sup Ct *review denied* (1974), where this court construed the term "good moral character" as a ground for denying registration under the state medical practice act. We also note that the court in *Mintz* stated that the standard of conduct is to be obtained through expert opinion except where the standard is clear. As in *Mintz, Ward* and *Campbell,* we conclude that expert opinion is not necessary in this situation. The distribution of questions and answers which petitioners knew, or should have known, were taken from a scheduled professional licensing examination prior to the administration of that examination, is clearly violative of the standard set forth in ORS 696.050 (1).

■ The courts will not rule a statute to be unconstitutional if it is capable of a constitutional construction. *State v. Pagel,* 16 Or App 412, 518 P2d 1037, Sup Ct *review denied* (1974), *cert denied* — US —— (October 15, 1974). *See also, State v. Hodges,* 254

Or 21, 457 P2d 491 (1969); *City of Portland v. Kreutz,* 7 Or App 618, 492 P2d 824 (1972). ORS 696.300 (1) (q) is capable of a constitutional construction. We do not find it unconstitutionally vague.

Affirmed.