Argued April 20, affirmed August 2, reconsideration denied
September 12, 1978, petition for review denied January 23, 1979

# In the Matter of the Real Estate Broker's License of

## STANFILL, *Petitioner,*

*v.*

## REAL ESTATE DIVISION, *Respondent.*

### (CA 9593)

581 P2d 980

Nels Peterson, Portland, argued the cause for petitioner. With him on the brief was Peterson, Peterson & Peterson, P.C., Portland.

Jan P. Londahl, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were James A. Redden, Attorney General, and Al J. Laue, Solicitor General, Salem.

Before Schwab, Chief Judge, and Thornton, Tanzer and Buttler, Judges.

BUTTLER, J.

**BUTTLER, J.**

Petitioner appeals from an order of the Real Estate Commissioner suspending his Real Estate Broker's license for one year, upon a finding of violation of ORS 696.301(32).[1] The following facts, most of which are paraphrased from the findings of the Commissioner, are supported by substantial evidence in the record:

On August 16, 1975, petitioner prepared an "Earnest Money Receipt-Offer and Acceptance" between potential purchasers and the owners of a property listed with his office, one of the conditions of which was that the purchasers have 15 days within which to inspect and approve the premises. A week later, the purchasers became aware of some structural defects due to pest infestation, and shortly thereafter notified petitioner of the problem. On August 27, 1975, purchasers amended their offer to purchase the property, thereby making the agreement subject to an inspection report, with any structural damage to be repaired in a professional manner, and the property treated with pesticide in a professional manner, with the sellers assuming the first $500 of costs.

On September 3, 1975, a pest control company inspected the premises and reported its findings to petitioner. Petitioner engaged a second company to inspect the premises, and Mr. Chester Steele, inspector for the second company, reported to petitioner indicating in some detail what work had to be done to repair the damage. On September 16, 1975, the sellers, by letter accompanied by the second inspection report, requested a contractor to submit an estimate of the

---

[1] ORS 696.301(32) provides:

"The commissioner may suspend or revoke the real estate license of any real estate licensee or reprimand any licensee, or may deny the issuance of a license to an applicant, who has done any of the following:

"* * * * *

"(32) Any act or conduct, whether of the same or of a different character specified in this section which constitutes or demonstrates bad faith, incompetency or untrustworthiness, or dishonest, fraudulent or improper dealings."

necessary repairs to petitioner. The contractor was hired, and performed some, but not all, of the necessary repairs, which consisted primarily of replacing floor joists; those under a bedroom were replaced, but those under the bathroom were not.

On October 11, 1975, purchasers, relying on the assurances of petitioner that all required repairs had been completed, accepted the repairs.

Mr. Steele, who had prepared the second inspection report, was requested by petitioner to treat the property chemically for pest infestation. He entered the property on October 13, 1975, and in the process of performing his work, discovered that a noticeable portion of the necessary repairs had not been made. He stopped his work immediately, and reported the omission to petitioner, who instructed Mr. Steele to perform the chemical treatment, and not mention the need for further repairs to anyone. Mr. Steele, concerned about his position in the matter, called his licensing authority (Oregon Department of Agriculture) to report the incident, and then proceeded to complete the chemical treatment.

On November 21, 1975, the sale of the property was closed without the purchasers being made aware of the unfinished repairs, despite petitioner's knowledge thereof.

■ Petitioner raises five assignments of error. First, petitioner asserts "[t]he charge of violation of ORS 696.301(32) by petitioner failed to state facts sufficient to support such alleged violation." We see no merit to the contention. The "Notice of Intent To Suspend Real Estate Broker's License" set forth detailed allegations against petitioner, the essential portions of which were subsequently established. The facts alleged in the Notice were more than sufficient to support the alleged violation, and to place petitioner on notice of the charges against him which he would be called upon to meet.

Second, petitioner urges that ORS 696.301(32) is unconstitutionally vague and uncertain. This contention was considered previously and rejected by this court in *Klein v. Real Est. Comm. Holbrook,* 19 Or App 646, 528 P2d 1355 (1974).

■ Petitioner's third assignment is closely related to his second. Petitioner argues that the power granted to the Real Estate Commissioner by ORS 696.301(32) constitutes an unconstitutional delegation of legislative power in violation of the Oregon Constitution. Essentially, petitioner argues that because there are no standards to guide the Commissioner (*i.e.,* the statute is so vague), the legislature has abdicated its legislative role to the Commissioner.

ORS 696.301 contains 32 subsections, 31 of which set forth specific acts or conduct which justify a suspension or revocation of a real estate license. At least three of those subsections[2] specifically deal with material misrepresentations. The final subsection, (32), under which petitioner was charged, provides:

> "Any act or conduct, whether of the same or of a different character specified in this section which constitutes or demonstrates bad faith, incompetency or untrustworthiness, or dishonest, fraudulent or improper dealings."

The section as a whole is quite specific, and leaves little room for "legislation" by the Commissioner. Subsection (32), while not necessarily circumscribed by the preceding subsections, refers to the "character" of the acts or conduct specified therein and provides guidelines for the determination of what acts or conduct "constitutes or demonstrates bad faith, incompetency or untrustworthiness, or dishonest, fraudulent or improper dealings." We have held, for example, that conduct under former ORS 696.300(1)(q) need not be legally actionable to justify suspension of a license, whereas such a requirement may have existed under

[2] *See* ORS 696.301(1); (6); (28).

some of the other subsections. *Blank v. Black,* 14 Or App 470, 512 P2d 1016, *rev den* (1974).

The terms used in ORS 696.301(32) are more definite than the term "unprofessional conduct" found by the Supreme Court to be sufficiently definite as to withstand challenge in *Board of Medical Examiners v. Mintz,* 233 Or 441, 448, 378 P2d 945 (1963). In that case the court said:

> "* * * Admittedly, the term 'unprofessional conduct' does not have precise contours circumscribing its meaning. The limits between good and bad professional conduct can never be marked off by a definite line of cleavage. And the variety of forms which unprofessional conduct may take makes it infeasible to attempt to specify in a statute or regulation all of the acts which come within the meaning of the term. The fact that it is impossible to catalogue all of the types of professional misconduct is the very reason for setting up the statutory standard in broad terms and delegating to the board the function of evaluating the conduct in each case. * * *"

■ Petitioner's fourth assignment contends that the evidence failed to establish a violation of the statute or of any rule or regulation promulgated by the Commissioner. In support of the assignment, it is contended that because there was no expert testimony as to what constitutes "bad faith," etc., under ORS 696.301(32), the findings are not supported by the evidence, relying on *Corcoran v. Bd. of Examiners,* 25 Or App 749, 550 P2d 1391, *rev den* (1976). The rule, as enunciated in *Corcoran,* is that the standard of conduct must be established by expert testimony, *except* where the standard is clear. *Board of Medical Examiners v. Mintz, supra; Klein v. Real Est. Comm. Holbrook, supra.*

■ We hold that expert testimony is unnecessary to establish that failure of a real estate broker to disclose, and his instructing another not to disclose, material matters on which consummation of the sale was contingent, constituted bad faith and improper

dealing in violation of ORS 696.301(32). *Cf. Ward v. Ore. State Bd. of Nursing,* 266 Or 128, 510 P2d 554 (1973).

Petitioner's final assignment of error is that the failure of the hearings officer to issue proposed findings and exceptions, pursuant to ORS 183.415(7)(f), constitutes reversible error. Petitioner misreads ORS 183.415(7), and ignores ORS 183.460. ORS 183.415(7) provides:

"(7) The record in a contested case shall include:

"(a) All pleadings, motions and intermediate rulings.

"(b) Evidence received or considered.

"(c) Stipulations.

"(d) A statement of matters officially noticed.

"(e) Questions and offers of proof, objections and rulings thereon.

"(f) Proposed findings and exceptions.

"(g) Any proposed, intermediate or final order."

ORS 183.460 provides:

"Whenever in a contested case a majority of the officials of the agency who are to render the final order have not heard the case or considered the record, the order, if adverse to a party other than the agency itself, shall not be made until a proposed order, including findings of fact and conclusions of law, has been served upon the parties and an opportunity has been afforded to each party adversely affected to file exceptions and present argument to the officials who are to render the decision"

We construe ORS 183.415(7)(f) to require the record to include proposed findings of fact only when they are, in fact, made.[3] ORS 183.460 provides *when* they are required: whenever a majority of the officials of the agency who are to render the final order have not heard the case or considered the record. Here, the Real

---

[3]This construction becomes clear when it is considered that if petitioner's contention were correct, the parties would be required to "stipulate" so that the record would include "stipulations," and the hearings officer would be required to take "official notice" of a matter so that the record would include a statement thereof.

[ 555 ]

Estate Commissioner, by virtue of ORS 696.301,[4] and 183.310(1),[5] is the sole person responsible for rendering the final order. The Commissioner, the record indicates, was in attendance for the proceedings herein, and, therefore, "heard the case or considered the record." He was entitled, without the benefit of proposed findings and exceptions, to issue the suspension order. *Campbell v. Bd. of Medical Exam.,* 16 Or App 381, 392, 518 P2d 1042, *rev den* (1974).

Affirmed.

---

[4] *See* note 1, *supra.*

[5] ORS 183.310(1) provides:

" 'Agency' means any state board, commission, department, or division thereof, or officer authorized by law to make rules or to issue orders, except those in the legislative and judicial branches."