**Richard R. MILLER, Appellant,**

v.

**IOWA REAL ESTATE COMMISSION,
Appellee.**

No. 61695.

Supreme Court of Iowa.

Jan. 24, 1979.

Martin R. Dunn, Des Moines, for appellant.

Richard C. Turner, Atty. Gen., Clifford E. Peterson and John I. Adams, Asst. Attys. Gen., for appellee.

Considered by REES, P. J., and McCOR-MICK, ALLBEE, McGIVERIN and LARSON, JJ.

McGIVERIN, Justice.

The question in this appeal is whether §§ 117.34(8) and (11), of chapter 117, The Code, 1975, regulating real estate brokers and salesmen, are unconstitutionally vague in violation of due process under amendments 5 and 14, U.S. Constitution and Article I, Sec. 9, Iowa Constitution. The trial court held they are not unconstitutional. We agree and affirm the trial court.

I. Petitioner Richard R. Miller is a real estate salesman licensed under Chapter 117. Respondent Iowa Real Estate Commission is established under § 117.8.

Real estate brokers and salespersons are required by § 117.46 to deposit only in a common trust account in a bank such funds as down payments, earnest money deposits, or other trust funds received on behalf of principals in real estate or business opportunity transactions. Section 117.46(4) further requires that the broker shall not commingle his personal funds or other funds in the trust account.

Richards Realty, Inc. employed and was operated by Richard Herman, as broker, and Miller, as a salesman. The firm kept its trust account in the Ankeny State Bank. Herman exercised little supervision over the account, which was handled by Miller. Herman, however, gave authorization to the Commission to examine the trust account. § 117.46(3).

An audit by an employee of the Commission of the trust account, commencing in October 1976, revealed a substantial shortage. Although the evidence varied as to the exact amount and the reasons for any shortage, Miller admitted writing personal checks on the trust account between January 1973 and May 1976. He claimed the money withdrawn rightfully belonged to him either through commissions due or cash given him by his parents. When he first learned of the audit, Miller deposited $10,-000 in the trust account to cover shortages, mortgaging his home to raise the money. He later testified he did not believe his behavior was "morally right" in transferring the money from the trust account.

On March 2, 1977 the Commission on its own motion filed a complaint against Miller under § 117.34 and held an evidentiary hearing under § 117.35. The complaint alleged that Miller violated § 117.46 by commingling his personal funds with other funds in the trust account and this act violated §§ 117.34(8) and (11) which state grounds for suspension or revocation of licenses of brokers and salesmen.

After the hearing the Commission made findings of fact and conclusions of law. The Commission found Miller took money from the trust account, consisting of deposits made by potential buyers in transactions not yet settled or closed, and applied the money to his personal use without authorization from the owners of the funds. The Commission further found that Miller's actions fell within the proscriptions of §§ 117.34(8) and (11).

The Commission ordered that the salesman's license of Miller be suspended for six months and that he be placed on probation for another six months following the end of the suspension.

Miller then filed a petition for judicial review in district court under § 17A.19. The court, in affirming the action of the Commission, found that substantial evidence supported the suspension and probation of Miller and that §§ 117.34(8) and (11) were constitutional.

II. In his appeal to us under § 17A.20, Miller presents only the questions of whether §§ 117.34(8) and (11) are vague and overly broad in violation of Amendments 5 and 14, U.S. Constitution, and Article I, Sec. 9, Iowa Constitution.

This is the first occasion we have had to consider a constitutional attack on § 117.34.

Sections 117.34(8) and (11), The Code, 1975, provide as follows:

117.34. Investigations by commission. The commission may upon its own motion and shall upon the verified complaint in writing of any person, provided such complaint together with evidence, documentary or otherwise presented in connection therewith, makes out a prima-facie case, investigate the actions of any real estate broker or real estate salesman, or any person who shall assume to act in either such capacity within this state and shall have the power to suspend or to revoke any license issued under the provisions of this chapter, at any time where the licensee has by false or fraudulent representation obtained a license, or where the licensee in performing or attempting to perform any of the acts mentioned herein is found to be guilty of:

.    .    .    .    .

8. Being unworthy or incompetent to act as a real estate broker or salesman in

such manner as to safeguard the interests of the public.

.    .    .    .    .

11. Any other conduct, whether of the same or different character from that hereinbefore specified, or demonstrates such bad faith, improper, fraudulent, or dishonest dealings as would have disqualified him from securing a license under this chapter.

Any unlawful act or violation of any of the provisions of this chapter by any real estate salesman, employee, or partnership or associate of a licensed real estate broker, shall not be cause for the revocation of the license of any real estate broker, partial or otherwise, unless the commission finds that said employer, partner, or associate. had guilty knowledge thereof.

Section 117.46(4) states:

4. Each broker shall only deposit trust funds received on real estate or business opportunity transactions as defined in § 117.6 in said common trust account and shall not commingle his personal funds or other funds in said trust account with the exception that a broker may deposit and keep a sum not to exceed one hundred dollars in said account from his personal funds, which sum shall be specifically identified and deposited to cover bank service charges relating to said trust account.

■ Although petitioner claims §§ 117.-34(8) and (11) are overly broad, his brief and argument fail to specify what constitutional rights the alleged overbreadth infringes. The overbreadth doctrine is premised on the principle that the First Amendment needs "breathing space" and that statutes restricting the exercise of First Amendment rights must be narrowly drawn. The essence of an overbreadth attack is the assertion of the constitutional rights of others upon whom the statutory language, by its broad terms, may have impact. "Litigants, therefore, are permitted to challenge a statute not because their own rights of free expression are violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression." *Broaderick v. Oklahoma*, 413 U.S. 601, 612, 93 S.Ct. 2908, 2916, 37 L.Ed.2d 830, 840 (1973). Petitioner has failed to show any relationship between §§ 117.34(8) and (11) and the exercise of First Amendment rights and, in fact, cites no authority for his contention. We, therefore, give no further attention to that portion of his claim and deem it waived. See Rule 14(a)(3), R.App.P.

In evaluating Miller's vagueness contention, the following principles must be considered.

■ When a constitutional challenge to a statute is made, a strong presumption of validity exists. The principles for our consideration in that regard are stated in *State v. Robbins*, 257 N.W.2d 63, 67 (Iowa 1977) and *City of Waterloo v. Selden*, 251 N.W.2d 506, 508 (Iowa 1977) and need not be repeated here.

The root of the vagueness doctrine is a rough idea of fairness. *Colten v. Kentucky*, 407 U.S. 104, 110, 92 S.Ct. 1953, 1957, 32 L.Ed.2d 584, 590 (1972).

In interpreting statutes under attack on the basis of vagueness we stated in *State v. Williams*, 238 N.W.2d 302, 307 (Iowa 1976) the rules are:

A statute offends the Due Process Clause if it does not give a person of ordinary intelligence a reasonable opportunity to know what is prohibited so that he may act accordingly. It meets the constitutional test if the meaning of the words used can be fairly ascertained by reference to similar statutes, other judicial determinations, reference to the common law, to the dictionary, or if the words themselves have a common and generally-accepted meaning.

■ Although the presumption of validity is operable in both criminal and civil statutes, the relevant test of vagueness differs. In *Millsap v. Cedar Rapids Civil Service Commission*, 249 N.W.2d 679 (Iowa 1977), we said:

Even if more specific language could be devised, it is apparent the absence of criminal sanctions requires less literal exactitude to comport with due process; unless the statute clearly, palpably and without doubt infringes the constitution it will be upheld. *Id.* at 684.

Miller argues that § 117.34 is penal in nature and, therefore, requires stricter standards of definiteness than a civil statute. He points to § 117.43 which provides for criminal penalties for violation of §§ 117.1 to 117.42 inclusive. However, several sections, such as §§ 117.7 and 117.9, do not address criminal conduct despite the literal language of § 117.43. Likewise, § 117.34 does not address criminal conduct. The statute delineates conduct which authorizes the commission to suspend or revoke a license. In the present case only a *civil* action to suspend or revoke Miller's license was brought under § 117.34.

In *Noll v. Mastrup*, 233 Iowa 1176, 1177, 11 N.W.2d 367 (1942) this court construed chapter 91.2, The Code, 1939, a predecessor statute to chapter 117, The Code, 1975, as indicating regulation of the real estate profession was the purpose of the law, despite provision of a fine or imprisonment for violation of the chapter.

The Supreme Court has suggested that vagueness concepts, applied to business regulation, are less strict than in other contexts. In *Papachristou v. City of Jacksonville*, 405 U.S. 156, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972), the court reviewed a vagrancy ordinance but noted that "in the field of regulatory statutes governing business activities, where the acts limited are in a narrow category, greater leeway is allowed." 405 U.S. at 162, 92 S.Ct. at 843, 31 L.Ed.2d at 116–117.

We hold that §§ 117.34(8) and (11) are remedial and civil as applied in this case rather than penal in nature and need, therefore, meet a less strict standard of definiteness.

Section 117.46 places a duty on brokers not to commingle their funds with trust account funds.

Real estate brokers and salesmen represent their clients in the capacity of agent. This is a fiduciary relationship which requires a high degree of honesty and trust between the parties. Most realty transactions involve the exchange of monetary consideration between the parties. Brokers and salesmen representing the parties are with regularity called upon to take custody and administer the exchange of the consideration, thus handling the money of others. The public has the right to expect that brokers and salesmen will comply with § 117.46 and not commingle funds of the broker with funds of the clients. Realty brokers and salesmen are placed on notice by § 117.46 as to what is expected of them in the handling of funds of others.

This notice and knowledge lends certainty of definition to the terms in §§ 117.-34(8) and (11), attacked by petitioner, so that a licensed broker or salesman will know when he is violating the statute.

The language of § 117.34 under consideration thus becomes clear and unequivocal when measured by common understanding in practice in the real estate profession.

Other authorities further assist in our consideration of Miller's vagueness attack on § 117.34.

The Supreme Court considered a vagueness attack on conduct regulation in *Arnett v. Kennedy*, 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974), where a federal employee challenged his dismissal under a Lloyd-La-Follette Act provision authorizing removal or suspension "for such cause as will promote the efficiency of the service." 416 U.S. at 140, 94 S.Ct. at 1637, 40 L.Ed.2d at 25. In upholding the validity of the statute, 5 U.S.C. § 7501(a), the court emphasized the necessity for generality saying:

There are limitations in the English language with respect to being both specific and manageably brief, and it seems to us that although the prohibitions may not satisfy those intent on finding fault at any cost, they are set out in terms that the ordinary person exercising ordinary

common sense can sufficiently understand and comply with, without sacrifice to the public interest. 416 U.S. at 159, 94 S.Ct. at 1647, 40 L.Ed.2d at 36, citing to *CSC v. Letter Carriers*, 413 U.S. 548, 578–579, 37 L.Ed.2d 796, 93 S.Ct. 2880 (1973).

Other jurisdictions have also applied the vagueness test to statutes regulating professional conduct. Three jurisdictions have examined regulation of real estate brokers and salesmen under statutes similar to those presented in the case at bar. In *Klein v. Real Estate Commissioner*, 19 Or.App. 646, 528 P.2d 1355 (1974), real estate brokers distributed state test questions and answers to pupils of their privately operated real estate education school. The brokers were charged with a complaint based on Oregon statute 696.300(1)(q) which prohibited:

> Any act or conduct, whether of the same or a different character than specified above in this section, which constitutes or demonstrates bad faith, incompetency or untrustworthiness, or dishonest, fraudulent or improper dealings. 528 P.2d at 1358, n. 1.

The Oregon court held the statute *not* unconstitutionally vague, although "quite broad." 528 P.2d at 1361.

The New York court reviewed broker regulation in *Gold v. Lomenzo*, 35 A.D.2d 1054, 316 N.Y.S.2d 830, mod. 29 N.Y.2d 468, 329 N.Y.S.2d 805, 280 N.E.2d 640 (1972). Where a broker acted as a broker during a period of license suspension, the commission undertook to revoke his license under New York statute 441-c which provides for suspension or revocation when the licensee "has demonstrated untrustworthiness . . . to act as a real estate broker." 316 N.Y. S.2d at 833. On appeal the court held the statute *not* unconstitutional where previous decisions had construed the law and, in any event, the conduct was proscribed by criminal law as well. 316 N.Y.S.2d at 833–834; 280 N.E.2d at 644. The New York court stated "it has never been necessary for the Legislature to specifically enumerate the precise deviations which it considers unworthy of a particular profession." 280 N.E.2d at 645.

Finally, in the District of Columbia case of *Greene v. Real Estate Commission*, 263 A.2d 634 (D.C.App.1970), a real estate broker failed to either remit or account for a client's deposit. He was charged with a complaint based on District of Columbia statute, 45–1408(h), which empowered the real estate commission to suspend a license for action which:

> Demonstrated such unworthiness or incompetency to act as a real estate broker . . . as to endanger the interests of the public. *Id.* at 634 n. 1.

The court held the statute *not* unconstitutionally vague. *Id.* at 634.

■ We hold that §§ 117.34(8) and (11) are not unconstitutionally vague as applied to Miller. The statute is sufficiently definite to be understood by Miller as a salesman subject to its proscriptions.

The trial court was correct in its ruling. The order of the Commission suspending Miller's salesman's license shall be effective upon issuance of procedendo by this court. The period of probation shall run for six months after termination of the suspension.

The case is affirmed.

AFFIRMED.