Argued April 23, affirmed August 16, reconsideration denied September 22, petition for review denied October 12, 1976

## TODD AND RICHARDSON, *Petitioners,*
### *v.*
## REAL ESTATE DIVISION, *Respondent.*
### (CA 5157)
552 P2d 1328

*Norman F. Webb,* Salem, argued the cause for petitioners. On the brief were Ray W. Shaw and Webb and Shaw, Salem.

*Al J. Laue,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief

were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Before Schwab, Chief Judge, and Langtry and Lee, Judges.

LEE, J.

**LEE, J.**

Petitioners appeal from one-year license suspensions by the Real Estate Commissioner (Commissioner). The grounds for suspension were "substantial misrepresentations" and "untrustworthiness" per ORS 696.300(1)(a) and (q) (1973).[1] Petitioners deny the charges and claim that ORS 696.300(1)(q) (1973), as applied to them, is so vaque that it denies them due process of law under the Fourteenth Amendment to the U. S. Constitution and also violates Art I, § 21 and Art IV, § 1 of the Oregon Constitution. Petitioner Todd also appeals a ten-day license suspension for commingling his personal funds with those of his clients, in violation of ORS 696.300(1)(s) (1973)[2] and OAR 863-10-025.[3]

---

[1] ORS 696.300(1) (1973) provided:

"(1) The commissioner may, upon his own motion, and shall upon the verified complaint in writing of any person, provided such complaint, or such complaint together with evidence, documentary or otherwise, presented in connection therewith, shall make a prima facie case, investigate the actions of any real estate broker or real estate salesman, or any unlicensed person who assumes to act in either such capacity within this state, and has the power to suspend or revoke any license issued under ORS 696.010 to 696.490 and 696.610 to 696.730 at any time where the licensee has by false or fraudulent representation obtained a license, or where the licensee, in performing or attempting to perform any of the acts mentioned in ORS 696.010 to 696.490 and 696.610 to 696.730 is deemed to be guilty of:

"(a) Making any substantial misrepresentations.

"* * * * *

"(q) Any act or conduct, whether of the same or a different character than specified above in this section, which constitutes or demonstrates bad faith, incompetency, or untrustworthiness or dishonest, fraudulent or improper dealings.

"* * * * *

"(s) Commingling the money or other property of his principal or client with his own.

"* * * * *."

[2] ORS 696.300(1)(s) (1973); (*see* n. 1).

[3] The pertinent portion of OAR 863-10-025 is subsection (1) which provides as follows:

"All moneys of whatever kind and nature pertaining to real estate transactions as defined in ORS 696.010 belonging to others and accepted by the broker while acting in his capacity as a broker, shall be

Petitioner Todd is a licensed real estate broker. Petitioner Richardson is his licensed salesman. On April 9, 1973 Mr. and Mrs. Berry entered into a 90-day listing agreement with Todd for the sale of a lot and mobile home (property) which they were purchasing on contract. The listing price was $7,850. There was then a $3,906.43 unpaid contract balance on the property.

About the time that the property was listed, the Berrys rented a dwelling from Richardson which they occupied (except for periods of estrangement) for approximately one year. This landlord-tenant relationship continued until February 1974 when Mr. Berry informed Richardson that the equity in the property could be purchased for $500. The interrogation of Mr. Berry by counsel for petitioners was, in part, as follows:

"Q  Did you understand he [Richardson] was no longer acting in the capacity of an agent for and on your behalf?

"A  Yeah, right. He was more or less just—I just figured he was trying to sell it, you know. I knew he was going to make something out of it. I just wanted my five hundred.

"Q  Did you understand that he would be trying to sell it acting in his own behalf?

"A  For him to get it?

"Q  Right.

"A  Right. I knew he was going to get something."

Thereafter, on February 20, 1974, 226 days after the listing expired, Mrs. Berry wrote Richardson a letter as follows:

"* * * * *

deposited in a neutral escrow depository or in a separate bank account to be entitled CLIENT'S TRUST ACCOUNT, maintained by the broker as a depository for clients' funds and shall be retained in this bank account until the transaction involved is consummated or terminated, at which time the broker shall account for the full amounts received. However, a broker, in his discretion, may pay to any seller or to the seller's authorized agent, the whole or any portion of such special deposits provided that such broker shall, nevertheless, be held personally responsible for such deposits at all times."

"Here are the figures on the remaining amount owed on the trailer, $3,244.20.

"If I am correct I stated a price of $500.00 equity. I do believe this is a fair price. We will take just what equity we asked for and someone take over payments on the trailer.

"I hope that someway you might be able *to sell* this in about a month. We'd like to settle it as soon as possible.

"Thank you.        Mrs. Jim Berry

If you have any questions on this matter please write or call * * *.

"* * * * *." (Emphasis supplied.)

On March 8, 1974, 16 days after the date of Mrs. Berry's letter, Todd procured an "AGREEMENT TO PURCHASE" the property from Gordon Vogt and Irene Vogt (husband and wife) which was signed by Gordon E. Vogt only. The agreement was part of an "EARNEST MONEY CONTRACT" form likewise dated March 8, 1974 which set forth a sale price of $5,850 including assumption of the $3,244.20 contract balance on the property.

Also, on March 8, 1974 a deposit was made to one of Todd's trust accounts with entry of "Vogt 2,605.80" (the difference between $5,850 and $3,244.20). The earnest money form contained spaces for the "seller" (Berrys) to note acceptance of the Vogt agreement to purchase but *those spaces are blank.*

On March 11, 1974 the Berrys came to the petitioners' office and executed an "ASSIGNMENT OF CONTRACT" whereby they assigned their contract rights in the property. The assignment revealed the $5,850 consideration for the property and the names of "GORDON VOGT, SR. and IRENE VOGT" as assignees. Mrs. Berry testified that she did not read the assignment which she executed. Mr. Berry testified that he relied on Mrs. Berry in business matters. They were at the petitioners' office for less than 10 minutes. *Neither of the petitioners at any time disclosed to the Berrys* the existence of the Vogt "AGREEMENT TO PURCHASE" dated March 8, 1974.

Also, on March 11, 1974, the Berrys receipted for a "CLOSING STATEMENT" prepared by Todd which bore that date and showed that the property was being sold to "E. A. Richardson & E. A. Richardson." It further showed:

> "Selling price and terms: 3,744.20. Seller to receive ($500.00) Five Hundred and no/100 for their equity and purchaser to pay all other costs including back taxes, back payments, and to assume a balance of contract of $3,244.20."

A portion of this closing statement form contained a "PURCHASER'S STATEMENT" with *all lines thereof blank.*

On March 18, 1974 Mr. Vogt receipted for a copy of a "CLOSING STATEMENT" dated March 11, 1974 which recited that he and his wife were buying from the Berrys and showed:

> "Selling price and terms: 5,850.00 Purchaser to assume existing contract with Mrs Ruth Ernston which is $3,244.50 [sic] and to pay in cash the difference."

We note that petitioners *retained* the "PURCHASER'S COPY" as well as the "SELLER'S COPY" of this Vogt "CLOSING STATEMENT."

There was a "DEAL ENVELOPE" which bore notations that the property was "Sold for Jimmie Berry Owner" and "Sold to Gordon Vogt Sr." and that the closing date was "11 March 1974."

The petitioners had a net remainder (after payment of miscellaneous closing costs) of $1,872.26. On March 12, 1974 Todd issued Richardson a check for $936.13 (half of $1,872.26) marked "(½) Half commission on Berry-Vogt deal."

None of the parties complained about the transaction. It was discovered by the Commissioner in the course of a routine audit. Todd admitted the commingling of funds but testified that it was inadvertent.

Neither Todd nor Richardson has been the subject of prior disciplinary proceedings. The record contained

many strong statements in support of the good character of both petitioners.

The petitioners' theory is that there was in effect a sale from Berrys to Richardson which was morally binding if not legally enforceable at a time prior to procuring the agreement to purchase from Vogts. Therefore, petitioners had no fiduciary duty to the Berrys. Indeed, it appears that both Mr. and Mrs. Berry understood that Richardson anticipated reselling the property for a profit. However, the record does not establish that there was in fact any sale from Berrys to Richardson.

The scope of our review is governed by ORS 183.482(8).[4] Thus, the questions before us are whether there was substantial evidence to support the Commissioner's findings that:

(1) the petitioners made "substantial misrepresentations" in violation of ORS 696.300(1)(a) (1973);

(2) the petitioners were "untrustworthy" in violation of ORS 696.300(1)(q) (1973);

(3) petitioner Todd had commingled clients' funds with his own in violation of ORS 696.300(1)(s) (1973) and OAR 863-10-025.

Substantial Misrepresentation

The Commissioner found that:

"* * * * *

"Richardson represented to the Berrys at the time of

---

[4] ORS 183.482(8) provides:

"The court may affirm, reverse or remand the order. The court shall reverse or remand the order only if it finds:

"(a) The order to be unlawful in substance or procedure, but error in procedure shall not be cause for reversal or remand unless the court shall find that substantial rights of the petitioner were prejudiced thereby; or

"(b) The statute, rule or order to be unconstitutional; or

"(c) The rule which the order enforces or upon which the order is based or dependent, is invalid under the provisions of subsection (3) of ORS 183.400; or

"(d) The order is *not supported by substantial evidence* in the whole record." (Emphasis supplied.)

conveyance that he and his wife were purchasing the property, whereas, in truth and in fact, Todd and Richardson had previously sold the property to Gordon Vogt and intended to share and did share an owners' profit on the transaction but without ever assuming the risks or costs or ownership of said property.

"* * * * *."

There is substantial evidence to support this finding because Richardson never actually became the owner of the property. The "DEAL ENVELOPE" reflected the actual transaction. On March 11 the petitioners procured the Berrys' signatures on a closing statement which erroneously showed "E. A. Richardson & E. A. Richardson" as the buyers. Also, we note that Todd gave the Berrys a closing statement that showed a selling price of $3,744.20 whereas the actual selling price was $5,850. These were substantial misrepresentations that support the Commissioner's finding of misrepresentation.

## Untrustworthiness

The Commissioner found that the petitioners

"* * * were untrustworthy in their dealings with the Berrys in that they failed to disclose to the Berrys that a purchaser was ready, able and willing to purchase the Berry property at a price substantially greater than the amount they offered and paid for the property; that they knowingly took advantage of the ignorance and financial distress of the Berrys to make a profit of $936.13 each * * *."

The opportunities for a real estate broker to profit (as distinguished from earning a broker's commission) by acts of omission are legion. Such transgressions of omission can be as reprehensible as those of commission. The instant case provides a classic example. To protect the public interest, the legislature imposed sanctions for "untrustworthiness" of a licensee (ORS 696.300(1)(q) (1973), now ORS 696.301(32).

Even if the petitioners' theory of the case be adopted arguendo, the facts are nevertheless governed by the rule laid down in *Widing v. Jensen, Real Estate*

[ 440 ]

*Com.,* 231 Or 541, 373 P2d 661 (1962), wherein the Supreme Court held that a broker, even after the listing agreement has expired, must inform the seller of a known potential purchaser before the broker himself buys the property. *See also Blank v. Black,* 14 Or App 470, 512 P2d 1016 (1973), Sup Ct *review denied* (1974), and OAR 863-10-045(1) and (3).[5]

The guidance set forth in *Starkweather v. Shaffer,* 262 Or 198, 203, 497 P2d 358 (1972), is pertinent:

> "The law is well established in this state, as elsewhere, that a real estate broker stands in a fiduciary relationship with his client and is bound to protect his client's interest. He must make a full and understandable explanation to the client before having him sign any contracts, particularly when the contracts are with the broker himself. *Prall v. Gooden et ux,* 226 Or 554, 561, 360 P2d 759 (1961). The relationship casts upon the broker the burden of showing that there was a full and complete disclosure and that the broker did not reap a secret profit. *Widing et al v. Jensen, Real Estate Com.,* 231 Or 541, 544, 373 P2d 661 (1962); *Parker v. Faust,* 222 Or 526, 353 P2d 550 (1960) * * *."

In *Blank v. Black, supra,* we stated that

> "[a] person licensed to deal in real estate under ORS ch 696 occupies a position of trust in dealing with the public. * * *" 14 Or App at 477.

We then held that

> "* * * the 1969 amendment [to ORS 696.020(2)(b)

---

[5] OAR 863-10-045(1) and (3) provide:

"(1) A broker shall not either directly or indirectly buy for himself, property listed with him or as to which he has been approached by the owner to act as broker, nor shall he acquire interest in any other property therein either directly or indirectly, *without first making his true position clearly known to the owner.* Satisfactory written proof of this fact must be produced by the broker upon request of the Commissioner.

"* * * * *

"(3) A salesman shall not buy for himself, either directly or indirectly, property listed with his employer-broker, nor shall he acquire interest in any other property, either directly or indirectly, *without first making his true position clearly known to the owner, nor shall he take an option unto himself from any such owner or to anyone on his behalf upon any property without first making his position known.* Satisfactory written proof of these facts must be produced by the salesman on request of the Commissioner."

[ 441 ]

(1973)[6]] evidences a legislative intent to restrict a realtor's right to engage in an arm's length transaction for his own account. The amendment operated to raise the standard of conduct from that applicable to an arm's length caveat emptor transaction between laymen to that applicable to a fiduciary transaction." (Footnotes omitted.) 14 Or App at 478.

The Supreme Court in *Prall v. Gooden,* 226 Or 554, 561, 360 P2d 759 (1961), emphasized that

.'"* * * a real estate broker stands in a fiduciary relationship with his customer or client and is thus bound to protect his clients' interests. He must, therefore, make a full, fair and understandable explanation to the client before having him sign any contracts, particularly when those contracts are with the broker himself. *Sexton v. Kelly* 185 Or 1, 9, 200 P2d 950; 12 CJS, Brokers 96, § 41; 8 Am Jur, Brokers 1035, § 86."

It is undisputed that petitioners failed to disclose to the Berrys the existence of the Vogt agreement to purchase. That constitutes substantial evidence that the petitioners were "untrustworthy" as found by the Commissioner. We may not substitute our judgment. *Miesen v. Dept. of Commerce,* 3 Or App 251, 256, 473 P2d 691 (1970).

The one-year suspension may be severe but under ORS 183.482 we have held that we do not modify administrative sanctions if they are within statutory limits. *Thoren v. Builders Board,* 75 Adv Sh 1460, 1463, 21 Or App 148, 533 P2d 1388 (1975).

## Constitutionality

The constitutionality of ORS 696.300(1)(q) (1973) which petitioners challenge on the basis of vagueness has already been decided, adversely to petitioners' pos-

---

[6]ORS 696.020(2)(b) (1973) provided that:

"A person who is licensed as a real estate broker or real estate salesman shall be bound by and subject to the requirements of ORS 696.010 to 696.490, 696.610 to 696.730 and 696.990 in doing any of the acts specified by subsection (8) or (9) of ORS 696.010:

"* * * * *

"(b) While acting in his own behalf."

ition, in *Klein v. Real Est. Comm. Holbrook,* 19 Or App 646, 660, 528 P2d 1355 (1974).

Affirmed.