Argued May 5, affirmed May 22, petition for rehearing
denied June 17, 1975

# MACDONALD, *Appellant, v.*
# DORMAIER ET UX, *Respondents.*

535 P2d 527

*William D. Rutherford,* of Rutherford and Drabkin, McMinnville, argued the cause for appellant. With him on the briefs were John T. Lewis, and Lewis & Foster, The Dalles.

*William F. Schroeder,* of Schroeder, Denning & Hutchens, Vale, argued the cause for respondent. With him on the brief were Charles A. Phipps, and Phipps, Dunn & Mobley, The Dalles.

HOWELL, J.

This is a suit for specific performance of an option to purchase ranch property in eastern Oregon.

The trial court entered a decree in favor of defendant denying plaintiff's request for specific performance, and plaintiff appeals. We affirm.

As Mrs. Dormaier is only a nominal party defendant, we shall refer to Mr. Dormaier as the defendant. Defendant's wheat ranch in Sherman County was heavily mortgaged and for financial reasons he decided to sell a portion. He contacted Carl Joplin, a realtor who was also a good friend, and Joplin introduced him to the plaintiff. Plaintiff had recently moved to Oregon from Washington and was interested in buying and selling property. In January, 1970 plaintiff and defendant executed an earnest money receipt for the sale of the property to plaintiff for $139,000. However, the mortgagee, Travelers Insurance Company, would not agree to the terms of the earnest money receipt, and the transaction failed. Thereafter, other attempts were made to sell defendant's property but they were all unsuccessful.

In April, 1970 plaintiff loaned defendant $20,000 which was to be repaid at $5,000 per year. The loan was secured by a second mortgage. At the same time, defendant gave plaintiff an option to purchase the ranch for $135,000, with $25,000 down and the balance to be payable at "eight thousand dollars or more per annum including interest @ 6¾% per annum. *Full balance including interest to be cashed out within ten years from date of first payment.*" (Emphasis supplied.)

In early 1972 defendant had paid plaintiff $10,000 on the April, 1970 note. Defendant desired to refinance the real property mortgage and made arrangements with Equitable Life Assurance Society to borrow $55,000 to pay off plaintiff and release the mortgage to Travelers Insurance Company on the ranch. In June, 1972 defendant's attorney prepared a mortgage satisfaction and a quitclaim deed to be ex-

ecuted by plaintiff, plus another option to purchase the property. The latter option was to be recorded after the Equitable mortgage was filed.

The option, like the previous April, 1970 option, provided that if the option was exercised, the balance, after a down payment of $25,000, was to be paid at $8,000 per year or more at 6¾ percent interest. It also contained the same provision that the entire unpaid balance should be paid not later than 10 years from the date of the down payment. These documents were sent by defendant to plaintiff with directions that they were to be returned to Wasco Title Oregon Ltd. as the escrow agent.

Approximately a week later plaintiff sent a satisfaction of mortgage, a quitclaim deed, and an option to purchase to Wasco Title, who notified defendant to come to its office to sign the documents. The option sent by plaintiff did not contain the clause that the balance must be paid in full not later than 10 years from the time of the down payment.[①] Defendant, without reading all the documents, signed them and the transaction was completed.

When plaintiff attempted to exercise the option, defendant refused, and this suit was instituted.

Approximately a year prior to the transaction and during the time the plaintiff, Joplin and defendant were negotiating on the sale of defendant's ranch, the plaintiff acquired a real estate salesman's license in Oregon. He planned to use it in conjunction with Joplin's real estate office. Joplin was interested in having plaintiff in his office "because he bought a lot of land and he sold a lot of land and to me that meant a lot because I knew if his license were hang-

---

[①] There was evidence that defendant was 66 years old, that the 10-year payoff provision was important to him, and that yearly payments of $8,000 including interest would require approximately 40 years to pay off the balance.

ing in my office, he would have me to do his work for him."

■ The plaintiff argues, and we agree, that a principal and agency relationship did not exist between plaintiff and defendant because plaintiff, as the owner of the option, was acting in his own behalf and not for defendant.[2] However, this lack of a principal-agency relationship does not excuse the plaintiff in this case from a duty of fair dealing with the defendant.[3]

In 1969 the legislature expanded the duty of fair dealing to include not only transactions by the broker or salesman when he is acting for a principal, but also transactions where the broker or salesman is acting in his own behalf. The statute, ORS 696.020(2), states:

"A person who is licensed as a real estate broker or real estate salesman shall be bound by and subject to the requirements of ORS 696.010 to 696.490, 696.610 to 696.730 and 696.990 in doing any of the acts specified by subsection (8) or (9) of ORS 696.010:

"(a) *While acting for another;* and

"(b) *While acting in his own behalf.*" (Emphasis added.)

Under the provisions of the above statute, the realtor

[2] The law is well established that a fiduciary relationship exists between a realtor and his principal. Widing et al v. Jensen, Real Estate Com., 231 Or 541, 373 P2d 661 (1962). He has the duty to make a complete and understanding disclosure of all material facts to his principal. Prall v. Gooden et ux, 226 Or 554, 360 P2d 759 (1961).

[3] Plaintiff cites Medak v. Hekimian, 241 Or 38, 404 P2d 203 (1965). There, plaintiffs were real estate agents and tenants of defendants. Defendants contended that a fiduciary relationship existed because plaintiffs were realtors. This court held that a simple landlord-tenant relationship existed and that plaintiffs owed no special duty to defendants. The case is not applicable because the court found that no overreaching or fraud was practiced by plaintiffs. More importantly, the case was decided prior to the enactment of ORS 696.020(2) in 1969.

is required to comply with ORS 696.300(q), which proscribes:

"Any act or conduct, whether of the same or a different character than specified above in this section, which constitutes or demonstrates bad faith, incompetency or untrustworthiness, or dishonest, fraudulent or improper dealings."

■ We completely disagree with plaintiff that the pertinent statutes in Chapter 696 limit the duty of full and fair disclosure only to situations where the realtor is acting as agent for his principal. While the statutes relating to real estate brokers and salesmen make no attempt to prevent such parties from making private transactions with property owners, the legislative history of the 1969 amendment clearly shows that the legislature intended to extend the code of ethics for realtors to situations where the realtor is engaged in private dealings.[3]

A similar case involving the duties of a broker when he is selling his private property was before the Court of Appeals in *Blank v. Black,* 14 Or App 470, 512 P2d 1016 (1973). The court stated:

"By statute he is held to a strict fiduciary standard of good faith and fair dealing. ORS 696.300. The 1969 legislature expanded this statute to cover sales and exchanges of the realtor's own property. ORS 696.020(2)(b). The effect of this statutory change was to raise the standard of business conduct of realtors when engaged in selling their own property to the same high standard applicable when they are functioning in transactions between private parties. Thus the 1969 amendment evidences a legislative intent to restrict a realtor's right to engage in an arm's length transaction for

---

[3] *See* Minutes of Senate Finance Affairs Committee, February 26, 1969, and statement of John E. Black, Real Estate Commissioner, attached to Minutes of House Committee on Financial Affairs, May 6, 1969.

his own account. The amendment operated to raise the standard of conduct from that applicable to an arm's length caveat emptor transaction between laymen to that applicable to a fiduciary transaction." 14 Or App at 478 (footnotes omitted).

■■ We conclude that plaintiff was obligated to advise defendant that he had changed the terms of the option prepared by defendant's counsel by eliminating the 10-year provision for plaintiff to pay off the balance of the contract. It is true that defendant should have read all the documents sent back to him by plaintiff, but plaintiff had the prior and foremost duty to advise defendant that he had changed the terms of the option. Failing to have done so, plaintiff is not entitled to specific performance.

Affirmed.