Argued and submitted December 16, 1988, affirmed June 14, 1989

# ATWOOD,
## *Petitioner,*

### *v.*

# REAL ESTATE COMMISSIONER,
## *Respondent.*

## (CA A46909)

775 P2d 880

Lawrence Reichman, Portland, argued the cause for petitioner. With him on the brief was Perkins Coie, Portland.

Robert M. Atkinson, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

NEWMAN, J.

## NEWMAN, J.

Petitioner, a real estate broker, petitions for review of respondent Commissioner's order that suspended his license for eight months. We affirm.

Petitioner was the president and one of two shareholders of Atka Construction, Inc. (Atka), which constructed and sold residential housing. It is not a real estate licensee. In 1980, petitioner negotiated an $83,500 land sale for Atka. The purchasers knew that petitioner was a real estate broker, as well as a shareholder and president of Atka. Petitioner drafted the contract and signed all of the papers involved in the transaction for Atka as its president, including the earnest money agreement and contract. The earnest money agreement required that the purchasers pay $5,000 as earnest money, $25,000 at closing and the balance under a land sale contract. They paid the earnest money by check to Atka. The Commissioner found that petitioner deposited the earnest money in Atka's account and not in a client's trust account or in escrow. There is no evidence that anyone paid him any brokerage fees.

The contract required that Atka pay $571.85 per month to Lincoln Savings and Loan Association on a first secured loan on the property and that it deposit and maintain in a separate "override" account the difference between the declining principal balance payable on that loan and the declining balance payable on the contract.[1] The commissioner found that neither Atka, nor petitioner on its behalf, made the initial required deposit of $11,300 at closing or maintained the account throughout the term of the contract. After Atka filed a bankruptcy petition, Lincoln Savings and Loan commenced foreclosure, and the purchasers refinanced to redeem their interest in the property.

The Commissioner concluded that petitioner, as a real estate broker, an officer and a shareholder of Atka and an active participant in the contract negotiations, was bound by the same requirements that apply to real estate licensees when they engage in professional real estate activity; that petitioner had violated ORS chapter 696 and the regulations thereunder when he failed to deposit the earnest money in a separate

---

[1] Petitioner personally guaranteed payment of the Lincoln Savings and Loan Association loan.

escrow or neutral account; and that he had violated the statute and regulations when he failed to deposit and maintain funds in the separate override account. As the sanction, she suspended his license.

Petitioner's first assignment is that the Commissioner made an erroneous interpretation of ORS 696.020(2), when she held:

> "[Petitioner], as an officer and shareholder of Atka Construction, Inc. who was actively engaged in and a participant in the negotiations between Atka Construction, Inc. and [the purchasers,] was bound by the requirements of OAR 863-10-046 and ORS 696.020(2)."

ORS 696.020(2) provides:

> "A real estate licensee shall be bound by and subject to the requirements of ORS 969.010 to 696.490, 696.710 to 696.730 and 696.990 in engaging in any professional real estate activity or *while acting in the licensee's own behalf* in the offer to, negotiations for, or sale, exchange, lease option or purchase of real estate." (Emphasis supplied.)

OAR 863-10-046 provides:

> "(2)   Transactions [involving the sale, exchange, lease option or purchase of real estate] of a real estate broker, of a designated real estate broker, or of a real estate appraiser shall be handled as other professional real estate activity of the licensee.
>
> "* * * * *
>
> "(5)   This section shall apply to offers and transactions entered into by *corporations,* partnerships, limited partnerships, or other legal entities *in which any real estate licensee,* active or inactive, *is a holder of an ownership interest* and where the licensee is, at any time, an active participant in or participates in negotiations concerning the offer or transaction on behalf of the entity." (Emphasis supplied.)

Petitioner argues that ORS 696.020(2) does not apply to him, because, he asserts, he was not acting as a real estate broker when he actively participated in negotiating and closing the transaction. Because he was not the only shareholder of Atka, he also asserts that he was not acting "in [his] own behalf," but on behalf of Atka. He points out that the purchasers knew that he was not acting as a real estate broker, but as president of Atka and on its behalf. He argues that OAR

863-10-046 goes beyond ORS 696.020(2) and is invalid, because it purports to apply to a real estate licensee who is "a holder of an ownership interest" rather than a holder of the sole ownership interest in the entity on whose behalf he acts.

**1-4.** The statutory term "in the licensee's own behalf" is an inexact term that the Commissioner must apply in a manner consistent with the statutory policy. *See Springfield Education Assn. v. School Dist.*, 290 Or 217, 226, 621 P2d 547 (1980); ORS 183.400(4)(b). The statute extended the statutory ethical rules for real estate licensees to apply when they are engaged in "private dealings." *See McDonald v. Dormaier,* 272 Or 122, 127, 535 P2d 527 (1975).[2] The Commissioner was entitled to interpret the term to include a licensee when he acts on behalf of a corporation in which he owns some, but not all, of the shares. OAR 863-10-046 is, therefore, consistent with the statute and is valid. The Commissioner did not err when she concluded that petitioner "was bound by the requirements of OAR 863-10-046 and ORS 696.020(2)."

**5.** Petitioner's second assignment is that the Commissioner erroneously interpreted *former* ORS 696.241 and *former* ORS 696.301(21) when she ruled:

> "[Petitioner] violated the provisions of [*former* ORS 696.301(21)] in that, by failing to deposit the $5,000 earnest money received from [the purchasers] into either his clients trust account or a neutral escrow, he failed to maintain on deposit in a bank account or neutral escrow depository funds entrusted to him as a real estate broker as required by ORS 696.241 and the rules of the Real Estate Agency."

*Former* ORS 696.241(1) provided:

> "Each real estate broker and appraiser shall maintain in this state one or more separate bank accounts that shall be designated a Clients' Trust Account in which all trust funds received or handled by the broker, appraiser and the real estate licensees subject to the supervision of the broker or appraiser on behalf of any other person shall be deposited unless, pursuant to written agreement of all parties having an

---

[2] The court stated that

"the legislative history of the 1969 amendment clearly shows that the legislature intended to extend the code of ethics for realtors to situations where the realtor is engaged in private dealings." 272 Or at 127.

interest in the trust funds, the trust funds are immediately placed in a neutral escrow depository in this state."

*Former* ORS 696.301 provided in part:

"The commissioner may suspend or revoke the real estate license of any real estate licensee or reprimand any licensee, or may deny the issuance or renewal of a license to an applicant, who has done any of the following:

"* * * * *

"(21) Failed to maintain on deposit in a bank account or neutral escrow depository funds entrusted to the licensee as a real estate broker or other as required by ORS 696.241 and the rules of the agency."

Petitioner argues that he did not accept the earnest money as a "real estate broker" and, therefore, that *former* ORS 696.241(1) did not apply to him. We disagree. We have already noted that, when Atka received the earnest money, petitioner was one of its shareholders and an officer, an active participant in the contract negotiations and a real estate licensee. Accordingly, under ORS 696.020(2) and OAR 863-10-046, petitioner was obliged to comply with *former* ORS 696.241(1). He failed, however, to deposit the money in a trust account or an escrow. Accordingly, the Commissioner could find that he violated *former* ORS 696.241(1) and *former* 696.301(21).[3]

**6.** Petitioner's third assignment is that the Commissioner erroneously interpreted the law and also made findings that substantial evidence does not support when she ruled:

"[Petitioner] violated the provisions of [ORS 696.301(31)] by reason of each of the following * * *:

"(a) By drafting and entering into a contract with [the purchasers] which required the retention on deposit of a specifically determined balance of money and his subsequent failure to comply with that term under the contract, he engaged in conduct which constitutes and demonstrates bad faith, untrustworthiness and improper dealings;

---

[3] Petitioner also argues that, even if he was acting as a "real estate broker," he did not violate *former* ORS 696.301(21), because he did not commingle funds that belonged to Atka with his own funds, but deposited funds that Atka had the right to receive in its own account. Under the plain language of the statute, a real estate broker must deposit trust funds in a trust account or an escrow.

"(b) Pursuant to the provisions of OAR 863-10-095, his failure and neglect to abide by the provisions of OAR 863-10-046(2) by handling the transaction between Atka Construction, Inc. and [the purchasers] as he would handle any other professional real estate activity is deemed improper dealings."

ORS 696.301 provides, in part:

"The commissioner may suspend or revoke the real estate license of any real estate licensee or reprimand any licensee, or may deny the issuance or renewal of a license to an applicant, who has done any of the following:

"* * * * *

"(31) Any act or conduct, whether of the same or of a different character specified in this section which constitutes or demonstrates bad faith, incompetency or untrustworthiness, or dishonest, fraudulent or improper dealings."

Petitioner asserts that the Commissioner erred in interpreting ORS 696.020(2) and OAR 863-10-046(2) to apply to the *performance,* as well as the formation of the contract. He does not contest the Commissioner's finding that he did not *maintain* (as distinguished from *establish*) the override account on Atka's behalf during the contract term. He also does not assert here that, if ORS 696.020 does cover the contract's performance, his failure to maintain the override account for Atka throughout the contract term was not conduct constituting "improper dealings" under ORS 696.301(31). He does assert that ORS 696.020(2) did not require that he maintain the "override" account.

The statute's language "in the offer to, negotiations for, *or sale* * * * of real estate"[4] (emphasis supplied) is broad enough to include the contract's performance as well as its formation. The term "sale * * * of real estate" is an inexact term and could mean either the contract's formation, its performance or both. The Commissioner interpreted the term to include performance, and that interpretation is consistent with legislative policy. "In some cases, legislative history will reveal that certain situations were expressly considered and

---

[4] *Before 1981,* ORS 696.020 covered "the sale, lease option or purchase of real estate." In 1981, the legislature amended ORS 696.020(2) to state that it applies "in the offer to, negotiations for, *or* sale, lease option or purchase of real estate." Or Laws 1981, ch 617, § 2a. (Emphasis supplied.) The amendment did not *restrict* the statute's coverage.

intended to be included or excluded." *Springfield Education Assn. v. School Dist., supra,* 290 Or at 226. This is such a case. The Commissioner sponsored the 1969 amendments to ORS chapter 696 and testified before the legislative committee that considered the amendments and described particular situations that the Commissioner intended the amended statute to cover. One clearly involved a broker's performance after the closing of a contract that he had made in his own behalf.[5]

Petitioner also asserts that substantial evidence does not support the Commissioner's finding that he failed to *establish* the override account that the contract required. We disagree.

Affirmed.

---

[5] As an example, the Commissioner told the legislative committee:

"A few years ago another builder-broker sold several new houses on reasonable down payments. To maintain control over his equity and payments on the construction loans, he arranged the sales on contracts wherein he would take a portion of the monthly payment for his equity and forward the balance to the prime lender. Several of these people had their property foreclosed at considerable loss because the broker-builder 'milked' the loan payments and the mortgage company, having no official knowledge of the sales, did not notify the contract buyers until many delinquencies had accrued and then only by newspaper notice of the foreclosure suit. The broker, incredibly, had not violated ORS 696 * * *." House Committee on Financial Affairs, May 6, 1969, Exhibit 1.